McCALEB, Justice.
 

 These consolidated suits have for their object the expropriation by the City of New Orleans of Lots “A” and “B” of Square 394 of the first municipal district in connection with the construction of the Union Passenger Terminal. The right of expropria
 
 *665
 
 tion is not contested and the only question presented for determination is the value of the property. The District Judge fixed the value of lot “A” at $1200 and lot “B” at $1600.
 
 [1]
 
 In their answer and on appeal, defendants claim that a fair valuation of the entire property is $10,000.
 

 The city tendered three experts (real estate men of long experience) who are in substantial agreement that the market value of the lots and improvements, based on sales of similar property in the immediate vicinity, is between $2,600 and $2,800; The lots are contiguous and are bounded by Magnolia, Euphrosine, South .Robertson Streets and Howard Avenue, in a colored tenement ■district of New Orleans. Lot “A”, which ■contains 2017 square feet, is partially occupied by a small building comprising 720 square feet. This building, which is properly designated as a “shack”, is of brick construction on three sides and frame on the other. It rents for $6 per month, contains only two rooms, is not equipped with electricity and has its plumbing facilities in the back yard. Lot “B” contains 1610 square feet and has on it a frame building divided into three apartments, two of which rent for $8 per month each and the third, a one room apartment, rents for $5 per month, making a total of $21 per month revenue. It is also in a dilapidated condition except for a fairly new tarpaper roof. The interior walls, ceilings and. floors are in disrepair ; it has no electricity and the plumbing is located in the back yard.
 

 Mr. F. Poche Waguespack, a prominent local relator who has been employed by the city for the purpose of appraising and handling the purchases of the property which must be secured for the building and operation of the Union Passenger Terminal, testified that the basic value of land in the vicinity of lots
 
 “A”
 
 and “B” is 50^ per square foot; that this is the price paid by the City for property purchased by it in this neighborhood and that, in one instance,
 
 60$
 
 per square foot was given due to the fact that a corner lot was involved. His opinion that the value of lot “A” is $1,200 and lot “B” $1,600 is fully supported by recorded acquisitions of the city of property of like character and quality and by the evidence of two other relators.
 

 On the other hand, defendants produced a realtor,' also of prominence and many years of experience, who stated that the property was worth $5,600 and it was shown that he had appraised it at .that figure in, succession proceedings some two years prior to the giving of his testimony. He asserted that he had valued the land at $3,600, or $1, per square foot, and the improvements at $2,000 but that this valuation was based wholly on his own opinion or guess and not upon sales of property similarly situated.
 

 In addition, defendants tendered an architect who testified that the replacement
 
 *667
 
 costs of the buildings located on the land would be $4,314 and it is here contended that this amount should be added to the admitted value of the lots and employed as the determinative factor establishing the true value of the property.
 

 The argument is without support. It is well settled that the measure of compensation to be awarded an owner of property in expropriation proceedings is the market value—-that is, a price which would be agreed upon at a voluntary sale between a willing seller and purchaser, see Housing Authority of Shreveport v. Green, 200 La. 463, S So.2d 295; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853 and Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914 and that replacement cost is not “a fair method of calculating the value of improved property.” Texas Pacific-Missouri Pacific Terminal R. v. Rouprich, 166 La. 352, 117 So. 276, 277.
 

 It may be that, in cases where there have been no sales of similar property in the vicinity of that sought to be expropriated and market value is thus not readily ascertainable, other circumstances and factors must be explored in order to discover the true value—but this case presents no such difficulty because the city produced evidence of numerous purchases made by it of neighboring property, which this court has stated “is perhaps the best criterion of the value * * * ”. Texas Pacific-Missouri Pacific Terminal R. R. v. Dittmar, 161 La. 444, 108 So. 877.
 

 After all, the question for decision is purely one of fact, plaintiff producing three expert appraisers and defendant only one. The District Judge heard these witnesses testify and personally visited the property. On the record before us, we cannot say that he was obviously wrong in concluding that the estimates of plaintiff’s experts exhibited the true value of the property.
 

 The judgments are affirmed.
 

 [1]
 

 . By Act No. 325 of 1948, providing for the procedure in expropriation cases, trial by jury was abolished.