**69 So.2d 37**

### HOUSING AUTHORITY OF NEW ORLEANS

v.

### BRINKMANN.

No. 40368.

Nov. 9, 1953.

Rehearing Denied Dec. 14, 1953.

---

Dart, Guidry & Price, New Orleans, for defendant-appellant.

William J. Guste, James M. Colomb, Jr., Roy F. Guste, New Orleans, for plaintiff-appellee.

HAMITER, Justice.

The Housing Authority of New Orleans, a public body, instituted this action on February 15, 1951 to expropriate a lot of ground, with a single dwelling house thereon, located within the named city and bearing Municipal No. 523 St. Andrew Street. At the time Mrs. Wilhelmina Brinkmann Young, the defendant, owned the property and was renting it to a tenant at $20 per month.

On the conclusion of the trial, held without a jury and in which the matter of valuation was the only issue, the court adjudged the property to plaintiff and awarded to the defendant therefor the sum of $2,000.

The defendant appealed, urging that she should receive at least $4,500. Later, pending the appeal, she died and her heirs were made parties to the cause.

In deciding upon an award of $2,-000 the trial judge, as his recorded comments and dictated reasons for judgment disclose, was influenced primarily by the

fact that the property rented for only $20 per month. Of course, in passing upon litigation of this nature the rental, or income produced, a material factor, is to be taken into consideration; but it is not alone decisive of the amount to be granted. Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853 and Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193.

As said in Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295, 298, "The general rule is that the measure of compensation to be awarded the owner in expropriation proceedings is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy—in other words, the market value of the property. * * *" See also Housing Authority of New Orleans v. Persson, supra; City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812; Louisiana Highway Commission v. Davis, 204 La. 624, 16 So.2d 129; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; Louisiana Highway Commission v. Paciera, supra; State v. Barbe, 209 La. 185, 24 So.2d 372; City of New Orleans v. Noto, 217 La. 657, 47 So. 2d 36. Continuing in the Green case we stated: " * * * There are exceptions to this rule. In cases where there is no market value for a residence sought to be expropriated, the intrinsic value, or its value to the owner, must be taken into consideration; otherwise he might be depriv-

ed of his property without just and reasonable compensation. The compensation to which the owner is entitled is the full and perfect equivalent of the property taken— in other words, the loss caused to him by the taking. 'This means substantially that the owner shall be put in as good position pecuniarily as he would have been in if his property had not been taken'. 18 Am. Jur., § 240, p. 874. This is the rule established long ago and consistently adhered to by the Supreme Court of the United States."

█ Of most importance in determining market value are sales of similar properties in the vicinity of that sought to be expropriated. However, in the instant case there is proof of only one sale in the area (a house located slightly more than one block away which sold for $4,500), and it is so vague and indefinite on the question of similarity that little (if any) weight can be given it. The evidence contained in the record principally relates to intrinsic or true value and consists of opinions of experts, each party having offered the testimony of two realtors, and the defendant, in addition, having produced a building contractor as a witness.

█ It appears that the lot of ground in question, according to a survey made in 1950, has a frontage of 32' 5" on St. Andrew Street and runs back between equal and parallel lines a distance of approximately 128'. Per front foot the land was

valued by plaintiff's experts at $35 and by those of defendant at $45, they having been in disagreement. However, effect should be given to the testimony of all of such witnesses, City of New Orleans v. Larroux, supra, and State v. Landry, 219 La. 456, 53 So.2d 232; and when that is done the lot without the improvements is found to have had a valuation of $40 per front foot or of $1,296.67 in its entirety (32′ 5″ frontage).

The dwelling house on the lot, commonly known as a single residence, consisted of five rooms, together with front, side and rear porches. In reaching conclusions as to its worth all of the realtors offered as witnesses first computed its replacement value, using as a basis the surface area at $5 per square foot; then they deducted therefrom depreciation, the percentage of which depended upon their respective findings as to the condition of the premises.

The replacement value computed by plaintiff's witnesses was $5,725 (1,145 square feet at $5 per square foot), while that by defendant's experts was $6,230 (1,-246 square feet at $5 per square foot). Thus, there was a variance between the computations, a difference respecting the area's size having been responsible therefor. However, the latter computation seems correct. It took into consideration the three porches that existed, whereas the former (as we appreciate the evidence) did not.

Again, the experts differed as to how much the replacement value should be depreciated. Those for plaintiff urged 90%; and in justification of this figure one of them testified: "This building was pretty badly run down, and I don't think it is going to last too long. I illustrated that by my percentage of depreciation." On the other hand the defendant's experts suggested a depreciation of 60% which, under the circumstances, we think is proper.

As shown by photographs in the record and by testimony of the witnesses the house was in a rather dilapidated condition, particularly the exterior; and this evidently was responsible for its low monthly rental. But the evidence also discloses that it was well constructed, it contained a large quantity of very good materials, and it was not beyond repair as the 90% depreciation employed by plaintiff's experts indicated. According to the uncontradicted testimony of the building contractor offered by defendant, the structure could have been repaired and placed in good shape, at a cost of approximately $1,800, with the result that it would have lasted ten to fifteen years longer.

With a replacement value of $6,230 and a depreciation of 60%, the house's worth was $2,492. And by adding thereto the lot's value of $1,296.67, the true valuation of the entire property expropriated is determined to be $3,788.67. In this amount the defendant was entitled to be compensated.

For the reasons assigned the judgment appealed from is amended by increasing the award from $2,000 to $3,788.67; and, as thus amended, it is affirmed.