118 So.2d 131

**STATE of Louisiana, through the DE-PARTMENT OF HIGHWAYS**

**v.**

**O. H. HAVARD.**

**No. 44800.**

Feb. 15, 1960.

D. Ross Banister, Glenn S. Darsey, Norman L. Sisson, Ben C. Norgress, Brunswig Sholars, Chester E. Martin, Baton Rouge, for plaintiff-applicant.

Helen K. Overton, Clinton, for defendant-appellee.

SIMON, Justice.

The State of Louisiana, through the Department of Highways, pursuant to LSA–R.S. 48:441 et seq., and availing itself of powers therein prescribed, filed its petition to expropriate a servitude across certain property of the defendant, O. H. Havard, for the purpose of partially relocating Louisiana Highway No. 10 through the Town of Jackson, Louisiana. Plaintiff deposited $2,370 into the registry of the court as its estimate of the fair market valuation thereof.

Defendant answered the suit demanding remuneration in the amount of $8,400, and thereafter filed a supplemental and amended answer claiming that he was entitled to compensation in the amount of $10,100, an increase of $1,700 over the amount originally claimed.

After a trial on the merits the lower court awarded the defendant the sum of $4,630 with 5% interest per annum from

the date of the expropriation until paid, in addition to the sum of $2,370 previously deposited, or a total award of $7,000, and assessed the plaintiff with the expert witness fee for the defendant's witness in the amount of $75 as costs. The reasons for judgment do not reveal the method employed in arriving at the amount awarded nor is the amount apportioned or segregated as to the respective value of the land or improvements.

Plaintiff has appealed from the judgment and seeks a reduction of the award to the sum of $2,370 as originally estimated. Hence, the only question before us is the ascertainment of the just and fair valuation of the subject property.

Generally, the measure of compensation to be awarded in expropriation proceedings is the market value of the property—that is, the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. The best guide in determining the market value to which the owner is entitled under the law in expropriation suits is evidence of sales of similar or comparable properties in the vicinity. Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So. 2d 914; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; City of Shreveport v. Abe Meter Corp., 219 La. 128, 52 So.2d 445; Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37; and State v. Tramuta, 234 La. 741, 101 So. 2d 450.

Defendant's property is located upon the periphery of the developed area of Jackson, Louisiana, a town having a population of approximately 1500 inhabitants, the entire business district being confined within three blocks of Charter Street. The subject property is some three blocks from the westerly limits of the business district, fronting said street, having a frontage of 150 feet and a depth, between parallel lines, of 75 feet. The area expropriated consists of the entire frontage by a depth of approximately 35 feet. The entire remaining 40 feet in depth comprises a gully 30 feet deep, and this rear area of 150 feet by 40 feet is conceded to be useless and of no value whatever. Consequently, the permanent servitude herein sought, for purposes of awarding just compensation, is the front 150 feet by a depth of 35 feet, and it is that area alone upon which a valuation must be made. Charter Street, prior to the new development, was a combination of dirt and gravel, receiving little maintenance and coming to a dead-end at its western limits.

Located on the front portion facing Charter Street were two small rental build-

ings, each constructed of frame siding boards, tin roofs, single floors, one without ceiling, the other with a "chicky board" ceiling. The largest of the two contained 576 square feet, with a small porch containing 105 square feet, the other containing 260 square feet, with an 80 square foot porch. Their physical condition was exceedingly poor, a fact made glaring by viewing the photographs of record. Although there were make-shift gas and light facilities, there was no available running water within either, resource thereto being from water taps on the outside. There were no bath or toilet facilities, other than a four by four foot "Virginia" type outhouse near the rim of the deep gully.

· When plaintiff first determined its need of a servitude across the subject property, the property was owned by M. L. Harvey, he having purchased it in 1946 for a consideration of $500. Failing to acquire the property by personal contact and final negotiations on April 10, 1958, plaintiff submitted to the then owner its final offer of $2,370, by letter on May 16, 1958. On or about the early days of June, 1958, plaintiff then learned that M. L. Harvey had on April 26, 1958, transferred the property to the defendant, O. H. Havard, he being a part time employee of M. L. Harvey. The sale was for a recited consideration of $6,000—$500 cash, and the unpaid balance payable in one hundred and twenty-two monthly installments of $45

each, and which plaintiff intimates was a simulation provoked and motivated by the proposed expropriation. After an unsuccessful effort was made by plaintiff to acquire the property from the defendant on the same basis as that previously offered to M. L. Harvey, this suit was filed on July 17, 1958.

Two expert witnesses testified as to the fair market value of the subject property. Thomas S. Williams, the expert witness for the defendant, appraised the total value of the property at $8,233.50 ($2,833.50 for the land, and $5,400 for the improvements). William J. Fort, expert witness for the plaintiff appraised the total value of the property at $2,370 ($500 for the land, and $1,870 for the improvements). Both of the experts employed the comparable sales approach as a fair basis for determining the value of the land as well as the replacement cost-less-depreciation method as a basis for estimating the value of the improvements.

The district judge rejected plaintiff's appraisals for reasons which we are constrained to hold as unacceptable. He accepted defendant's appraisal for the improvements, but decreased the amount awarded for the property as a whole to $7,000. In making this reduction he concluded that Williams had not. adjusted his estimate of the value of the land to reflect the difference in terrain of the expropriated

property and that of the comparables used, the latter having an elevation of five to six feet higher along the streets they fronted than that of the subject property, it being lower than the surface of Charter Street on which it fronted.

A study of the comparables considered by both witnesses reveals that defendant's valuation far exceeds the value of real estate generally in Jackson. After a close analysis of the testimony of defendant's expert, high valuation placed on the property by him was the result of several basic errors in his use of the comparables as follows: He made no effort to adjust the sales which he contended were of property similar to the subject property to take into account their physical comparisons, even though over half the subject property was occupied by a gully about thirty feet in depth. He included in his comparable sales one parcel several blocks away in the center of the commercial section of Jackson, even though the subject property was located in a residential section of the town. In estimating the value he included the full seventy-five feet depth although the servitude is upon only the front thirty-five feet and the remaining portion of the property is worthless as previously observed. He used the front foot value of his comparable sales without an effort to adjust this with relation to the various depths of the lots, some being 75 feet as was the subject property, and some being 150 feet. He then added these values together and divided by the number of sales in order to arrive at his comparable value.

Plaintiff concedes that all of the sales used by Williams, except the sale of a commercial property, were true comparables in that they were of similar property sold and bought as residential property.

Plaintiff's expert accepted and used three of the comparable sales used by defendant's expert as he felt that the other sales used were merely cumulative and their elimination or acceptance would not have any substantial effect on the net results. Plaintiff's only objection to Williams' use of the comparables (except the commercial property) was his failure to take into consideration the difference in value between the comparables, which land could be used in full, and the nature of the subject property in that its use was limited and confined to the thirty-five feet in depth, the rear portion admittedly being valueless. Considering the small usable depth of the subject property, we feel that the use of the front foot method in fixing its value would be unreasonable and unjust, there being such a wide variance of depth when compared with the lots sold and used as comparables. We necessarily conclude that more equitable basis for a determination of the value of the property here involved is the square foot method.

Using defendant's comparables (except the commercial property), we find that the average square foot value is $.1266. Plaintiff has expropriated a servitude over an area measuring 35 feet in depth by a frontage of 150 feet, thus making the value of the servitude $664.65, which award, we feel, is a fair and just valuation for the land taken.

 Plaintiff's witness assigned a replacement cost of $4 per square foot, while defendant's witness was of the opinion that it would cost $10 per square foot to replace the buildings in today's market. Both agreed that the improvements were subject to a depreciation of 50 per cent. The aforestated description of the buildings clearly reflects the excessiveness, undoubtedly given in all sincerity, of the estimate of defendant's expert, which he fixes at $10 per square foot for replacement cost. This is substantiated by his own admission that a modern, brick veneer house with a tile bath could be built for $10 per square foot on today's market, and thus affirms his realization that he greatly exaggerated the replacement cost. A study of the testimony convinces us that the valuation placed on the improvements by plaintiff's expert witness, given in equal sincerity, is reasonable and just, and accordingly we conclude and so award the sum of $1,870 therefor, or a total for both land and improvements of $2,534.65.

For the reasons assigned the judgment of the lower court, awarding the sum of $7,000 as compensatory damages, is amended by decreasing said award to the defendant to the total amount of $2,534.65, and as thus amended the judgment of the lower court is affirmed. Costs to be borne by the plaintiff.