GLADNEY, Justice.
The State of Louisiana, through the Department of Highways, deposited $11,-000 in the registery of the Clerk of Court of Ouachita Parish, as proper compensation for the expropriation of the property of the defendant, William C. McNeely. The property so taken is located in the City of Monroe and consists of a lot approximately 70 feet by 130 feet on St. John Street, improved with a two-story apartment house divided into four apartments. After the filing of plaintiff’s petition in June, 1960, the defendant answered alleging the value of his property to be $20,000. McNeely then made a withdrawal of the sum deposited and contested the *137 issue of compensation. After trial judgment was rendered fixing the compensation for the property at the sum of $17,000, and plaintiff has appealed.
A proper resolution of the question presented must be determined primarily from the testimony of witnesses who are skilled and experienced in the field of real estate appraisal. Each of the parties was represented by two expert witnesses, all of whom concededly were well qualified. These witnesses were E. A. Porter, Jr. and W. Dean Carter, for the defendant, and Jerry Tharpe and Chester Driggers for the plaintiff.
In what appears to be normal and usual procedure, separate values were assigned to the lot and to the improvements. With one exception each witness used the three accepted methods in ascertaining the market value of the subject property. These are denominated as market data approach, cost approach and income approach. Because of non-availability of comparables of probative worth the experts generally agreed the market data approach was insufficient and that the income approach afforded a better method of determining the market value of defendant’s property at the time of the taking. The determinations of the several appraisers were:
Improvements Land Total
Mr. E. A. Porter, Jr. $12,274.00 $4,575.00 $16,850.00
Mr. W. Dean Carter 12,950.00 4,550.00 17,500.00
Mr. Jerry Tharpe 6,328.00 4,372.00 10,700.00
Mr. Chester Driggers 6,610.00 4,390.00 11,000.00
The trial judge approved the values fixed by Porter and Carter and assigned written reasons which reflect thoughtful and careful analysis of all the evidence presented. As indicated by the above figures the appraisers were substantially in agreement as to the value.of the lot, but there were decided differences of opinion between defendant’s and plaintiff’s experts as to the value of the improvements located thereon.
The building was described by all witnesses as being in fair or good state of repair,[1] although there admittedly was some *138 relaxation in the maintenance thereof after it became known that the property would be condemned.
The Department of Highways is empowered through Article 6, § 19.1 of the Louisiana Constitution of 1921, LSA-Const., to take property for highway purposes by ex parte orders prior to trial and Judgment. The enabling act thereunder is to be found in LSA-R.S. 48:441 et seq. ■Where it is necessary for a court to determine the value of an entire property to be expropriated, a trial may be had for ascertaining the market value of the property. LSA-R.S. 48:450. Section 453 provides: that such market value shall be determined as of the time the estimated compensation was deposited. If a part of a tract is expropriated, damage to the remainder of the property is determined as of the date of the trial. However, in either case the defendant has the burden of proving his claim. LSA-R.S. 48:453. In State of Louisiana, Through the Department of Highways v. Rownd, La.App., Orleans 1959, 119 So.2d 282, 288, the court observed that when the owner claims the value of the expropriated property is in excess of the estimate, he has the burden of proving his claim, and
“He must produce convincing evidence that the value is in excess of that shown in the estimate on which the Department of Highways has made the deposit.”
Generally speaking, although the court may examine the qualifications of the several experts giving testimony and, in consequence thereof, accord greater weight to the testimony of some, yet where it appears the expert appraisers on both sides are equally well qualified and are grounded from the standpoint of sincerity and good reason, the testimony of each witness should be given consideration. Thus, it was said in Housing Authority of New Orleans v. Boudwine, 1954, 224 La. 988, 71 So.2d 541, 543:
“The greater part of the evidence adduced at the trial consisted of opinions of experts, and on them the decision herein hinges. Testimony of this nature is admissible and is often resorted to in fixing value in expropriation proceedings. Moreover, the opinion of each witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoints of sincerity and good .reasoning. City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812; State v. Landry, 219 La. 456, 53 So.2d 232, and Housing Authority of New Orleans v. Brinkman (Young) [224 La. 262, 69 So.2d 37], supra.”
Also in State v. Landry, 1951, 219 La. 456, 53 So.2d 232, 236, the court stated:
“We are aware, of course, that there are several kinds of evidence which may be taken into consideration in determining the value of property which has to be condemned in an expropriation suit. Counsel for the State lists seven different kinds in their brief and they state that all except one was introduced either by plaintiff or the defendants, or both in this case. It is a fact that there is a smattering of proof by other evidence of values but the real and substantial proof on which the judgment will have to .rest arises *139 out of the testimony of the various expert witnesses on both sides. What proof there is of other sales of property of a similar character in the vicinity and of rental values, is not sufficient to be of any aid in assisting the Court in fixing a true value.”
The application of the above stated principles, however, does not necessarily limit the court in its evaluation of the testimony, and it is free within judicial discretion to discover error and attribute proper weight and effect thereto. The import of the rule, we think, is that the trier of fact must recognize the probative value of all the evidence adduced and should not substitute its own opinion where competent expert testimony is presented. In the Landry case the Supreme Court found deficiencies in the testimony of the experts and accorded commensurate weight thereto.
The compensation to be awarded shall be the market value of the property taken. The market data approach, where such data may be obtained, has been preferred by the courts for determining the market value. Thus, we find this pronouncement in State of Louisiana, Through the Department of Highways v. Havard, 1960, 239 La. 133, 118 So.2d 131, 132:
“The best guide in determining the market value to which the owner is entitled under the law in expropriation suits is evidence of sales of similar or comparable properties in the vicinity. Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; City of Shreveport v. Abe Meter Corp., 219 La. 128, 52 So.2d 445; Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37; and State v. Tramuta, 234 La. 741, 101 So.2d 450.”
In many instances, however, comparable sales of properties in the vicinity which furnish the criteria for the market data approach are not available for arriving at the market value of the property taken, and in such instances other methods of valuation must be resorted to. However, regardless of the method used, .the evidence will reflect differences of size, location, date of purchase, type of improvements, accessibility and other factors having some bearing upon the value of the property. It is, therefo.re, incumbent upon those witnesses who furnish the court with appraisals to make careful and detailed examinations of all of the. comparables that can affect the market value of the subject property.
In the instant case all of the witnesses were of the opinion there was not sufficient evidence to support the market data approach. Thus, Porter frankly stated he found no properties he considered to be comparables. Carter found none in’ the vicinity of defendant’s property and those under discussion by Tharpe and Driggers were concededly entitled to but little weight. More reliance was placed upon the cost and income approach methods, with the latter apparently considered preferable.
The Supreme Court in State of Louisiana, Through the Department of Highways v. McDuffie, 1960, 240 La. 378, 123 So.2d 93, 99, recognized that rentals and income from the subject property are highjy relevant in the absence of comparable sales in the vicinity, but not necessarily controlling. 5 Nichols, Eminent Domain (3rd ed. 1952), Section 192, pp. 215, 216, states:
“When property is leased, the rent is derived almost entirely from the" property, although, of course, a landlord can sometimes get more than th.e' fair rental value from a tenant who has established a profitable business on the' property, and who will pay a high price' for a renewal of his lease rather than' incur the expense and loss of 'Custom' incident to a removal. However., as .a *140 safe working rule, if property is rented- for the use to which it is best adapted, the actual rent reserved, capitalized at the rate which local custom adopts for the purpose, forms one of the best tests of value, and accordingly evidence of the rent actually received at a time reasonably near the punctum tem-poris of the taking should be admitted. As stated above the acceptance of rental value is predicated on the assumption that the rent is received by reason of the best available use to which the property may be put. Such rentals must furthermore be free of any taint of collusion between landlord and tenant.”
In Efurd v. City of Shreveport, 1958, 235 La. 555, 105 So.2d 219, 222, the Supreme Court recognized the use of the income method, commenting:
“In view of the unavailability of said method [market data] the income method based on the rental value of the property was a factor which was properly taken into consideration to establish the fair market value as well as other surrounding factors.”
Likewise, it was enunciated in Parish of Iberia v. Cook, 1959, 238 La. 697, 116 So.2d 491, 497, that in arriving at the basis for assessment of the true value of property in expropriation proceedings, all available uses to which the land might be put should be considered, buf such, however, should not include speculative value.
Despite the experts’ general dissatisfaction with use of the market data approach herein, the witnesses, Porter excepted, gave some consideration to that method. Thus, employing the market data approach, Carter fixed the sum of $17,500 as the value of the entire property, Thai-pe $11,000, and Driggers $11,450. Next, in employing the cost approach, Porter utilized a construction cost of the apartment building of $34,829, with depreciation of $22,639.00 or 65.3%. He used an age factor of thirty-five years with rémainin'g economic life Of fifteen years. Carter found the replacement cost to be $27,309.38, which was depreciated to the extent of $14,883.95 or 54.5%, with use of an age factor of thirty-five years and economic life of fifteen years. Tharpe determined the replacement cost to be $37,-616, which should be depreciated $30,845 or 82%. He employed an age factor of thirty-five years, with economic life of ten years. Driggers reached substantially the same conclusion as Tharpe. After addition of items of value such as landscaping, garage, walks, etc., the final determined market value through use of the cost approach was as - follows:
Porter . $12,490.00
Carter . 12,926.00
Tharpe . 6,700.00
Driggers . 7,082.00
By employment of the income approach Porter reached a valuation of $16,850 for the entire property, Carter $15,600, Tharpe $11,500 and Driggers $10,490. In reaching the last mentioned conclusions, each of the witnesses determined the net effective income which was capitalized at a fair rate of return, and multiplied by the number of years of the economic life remaining to the property. Obviously, certain factors had a profound impact upon the results obtained. As heretofore mentioned, Porter and Carter determined the improvements had an economic life of fifteen years, whereas Tharpe and Driggers assigned a ten-year period. Another factor was the advance knowledge of the condemnation proceedings which affected the rentals of the subject property. Porter and Carter gave consideration to the rent which the property was entitled to receive unaffected by the influence of the highway condemnation. Manifestly, loss in rentals occurred for this reason. Tharpe and Driggers made no allowance on account of this factor. Another factor which defendant’s witnesses opined was entitled to consideration was the past management of the apartments. For instance, Mr. Porter testified that under the management of Mrs. McNeely the proper *141 ty had not attained its maximum rental income, and that under proper management the income would be enhanced and conform to rentals of comparables in the neighborhood.
Considered in the light of these factors and variables, we are in accord with the values as determined by the trial court. Accordingly, the judgment from which appealed is affirmed at appellant’s cost.

. Porter gave his description of the property which is not controverted:
“The subject property consists of four (4) apartments with a total of 22 rooms, 4 baths, two porch areas. The apartment downstairs on the north side consists of a glassed-in sun porch, living room, dining room, breakfast room, kitchen, three (3) bedrooms, bath and screen porch. This apartment has a place for a built-in ironing board, has a 20 gallon water heater, washing machine connections, ample cabinet space in the kitchen; the bath room has a large linen closet, the bathroom and kitchen have inlaid linoleum floors. All the bedrooms have large closets, some walk-ins. One of the bedrooms has a window bench, however, it is not under the window; it is on the opposite side of the room but it does add for extra storage space. The apartment has paper and canvas on solid wood walls and Venetian blinds. The southside apartment downstairs consists of a living room, two (2) bedrooms, dining room, kitchen, private bath. It also has storage area. This apartment has paper and canvas on solid wood walls and pine floors. It has Venetian blinds in the living room and shades throughout the rest of the apartment. This apartment has two (2) closets plus a utility room and an attic fan. This bathroom floor in this apartment is asphalt title. The upstairs portion consists of two (2) apartments, each containing a living room, bedroom, eating area, kitchen and storage. All the apartments have a storage area and the apartment to the south side has a screen porch area. To enter the upstairs apartment one enters an entrance hall that has a window bench • as well as a bench at the top of the ■ stairs. It is both for storage and for resting in case you get tired walking up. *138 Window shades are throughout the apartments upstairs. All the apartments are equipped with space heaters. Among the extras are washing machine connections both downstairs and in the upstairs apartments. Each apartment has its own water heater. Also 220 electrical outlets are in the apartments. Improvements surrounding are ample, shrubbery making the property comfortable, nice oak shade trees, a two car garage, gravel drive, sidewalk leading to the front entrance; a back yard has a fig tree, oak and pecan trees. The roof has a 210 pound asphalt shingle. The house has 2 by 6 rafters with 106 siding. As a whole this building is in good physical condition, however, the house could stand paint on the west side.”