LANDRY, Judge.
This is an appeal by the State of Louisiana, Through the Department of Highways (hereinafter sometimes referred to and designated simply as “Department”), from the judgment of the trial court fixing the value of real property belonging to defendant Peter J. Ebrecht, Sr., and expropriated by the Department for highway purposes.
Appellant, Department, deposited in the registry of the trial court the sum of $10,-030 (the appraised value of defendant’s property as ascertained by appellant’s appraisers). The trial court, however, awarded defendant-owner compensation and severance damages in the total sum of $15,769, an excess of $5,739 over the deposit by plaintiff and from said judgment the Department prosecutes this appeal contending the award of damages should be reduced to the amount of the aforesaid deposit.
Appellee does not question either the necessity for the taking of his property or the right of the Department to expropriate same for highway purposes, therefore, the only issue before us on appeal is that of the amount due defendant.
Subj ect property is rural in character being situated on State Route 22 (known as the Springfield Road) approximately three-fourths of a mile from the Town of Springfield. The entire tract contains 2.64 acres fronting 233 feet on the Springfield Road by such depth necessary to encompass the acreage indicated, the depth thereof being somewhat more than twice the width. The Department has taken therefrom .873 acres comprising the front thereof across its entire width by a depth of 288.69 feet on one side and 124.25 feet on the other. Situated on the property is a thirty year old frame dwelling consisting of four bedrooms, living room, kitchen, hall, bath, an open front porch and a rear screened porch with enclosed washroom. The residence is shown to be structurally sound, free of termites and constructed of materials admittedly superior to those available on the present day market, namely, good solid pine studding enclosed by cypress weatherboarding. The roof is of lifetime quality asbestos slate with copper valleys and gutters. Built on a foundation of concrete piers the house has a double fireplace and contains all necessary plumbing for the kitchen, bath and laundry including a 30 gallon water heater. In addition to a sanitary sewerage disposal system consisting of a concrete septic tank, the property contains an artesian well to supply the home with water. Two barns are situated to the rear of the residence as presently located.
The land, being higher in elevation than most property in the area, is admittedly well drained. That the land in question is a choice homesite is attested by the evidence which shows that it contains a fine stand of tall pines which make it most desirable as a country dwelling site and among which trees defendant’s residence is situated. In addition to the pine trees there is also a large oak situated to the rear of the residence, its presence further adding to the beauty of the tract for residential purposes. Defendant has landscaped the grounds by planting thereon a large variety of camellias, magnolias and other ornamental trees and shrubs which all appraisers concede to be an asset lending further value to the location as a residential site. The appraisers further agree the portion remaining after the taking is the least desirable part thereof for residential purposes in that most of the pine trees and the large oak (which constitute an asset to the property as a residential site) will be destroyed by the taking leaving the rear thereof virtually barren and unattractive as a homesite. Likewise there is no dispute between the appraisers that the highest and best use of the property is for residential purposes.
Before considering the testimony of the experts testifying on behalf of plaintiff and *626 defendant, respectively, we deem it advisable to set forth certain well established legal principles apropos the case at bar.
 In an expropriation proceeding the measure of damages due the owner by way of compensation is the market value of the property according to the best and highest use as of the date of institution of suit seeking its expropriation. Louisiana Power & Light Company v. Tricou, La.App., 128 So.2d 24; Louisiana Power & Light Co. v. Simmons, 229 La. 165, 85 So.2d 251; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541. The term “market value” as used in expropriation cases is that price a willing and informed purchaser will pay and a willing and informed seller will accept under ordinary and usual circumstances. Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193; Louisiana Power & Light Company v. Tricou, La.App., 128 So.2d 24, and cases cited therein.
The best criteria of the market value of property taken in expropriation proceedings are “comparables”, that is, sales of similar properties in the vicinity of the property expropriated. State Department of Highways v. Hebert, 227 La. 111, 78 So. 2d 528; Caddo Parish School Board v. Bland, 228 La. 393, 82 So.2d 687; State Department of Highways v. Hub Realty Company, 239 La. 154, 118 So.2d 364; State Through Department of Highways v. Stoer, 238 La. 718, 116 So.2d 498.
In determining the weight to be accorded the testimony of expert appraisers given to establish market value of property expropriated for public purposes, the settled jurisprudence of this state holds that opinions of such expert witnesses should be given little weight and effect in the event of their failure to explain the reasons upon which their conclusions are predicated. I-Iowever, if such a witness knows the location of the property, is familiar with its physical characteristics, its adaptability for certain purposes and has some knowledge of values based on experience or observation, the testimony of such witness should be considered and given some weight and should not be disregarded. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654; Louisiana Power and Light Company v. Tricou, La.App., 128 So.2d 24.
It is equally well settled that courts cannot accord any weight to the opinion of a witness appearing as an expert appraiser in an expropriation proceeding where there is no sound basis for the opinion given. State Through Department of Highways v. Barber, 238 La. 587, 115 So.2d 864; State v. Barbe, 209 La. 185, 24 So.2d 372; Town of Slaughter v. Appelby, 235 La. 324, 103 So.2d 461.
Severance damages, that is, damages to an owner’s remaining property are recoverable only to the extent of the diminution in value of the land remaining after the taking. Such damages cannot be presumed but must be established by the party seeking their recovery and mere inconvenience or loss of business may not be considered as an element thereof. Louisiana Ry. & Navigation Co. v. Morere, 116 La. 997, 41 So. 236; Louisiana Highway Commission v. Ferguson, 176 La. 642, 146 So. 319.
On the trial of this cause three appraisers testified on behalf of defendant owner, namely, Polk Hebert, Thomas G. Womack, Sr. and Robert G. Perrin.
Mr. Hebert, a former District Manager for Louisiana Power and Light Company, has since 1945, been self-employed as a fee appraiser during which period he has made approximately 1,500 appraisals in Tangi-pahoa Parish, wherein he resided from 1929 to 1938 and from 1945 until his appearance on the trial of this case. During the last 15 years, in addition to making fee appraisals, he has engaged in field work in connection with construction and securing rights of way. Of the appraisals made by him approximately two-thirds involved property situated in the Ponchatoula-Hammond *627 area and were made for the Veterans Administration, individuals and financial institutions.
Taking into consideration the condition of the local real estate market as he appreciated it, the location of the property in relation to highways, transportation, shopping facilities, churches and schools and the general desirability of the site for residential purposes, Hebert appraised the property taken at $14,500, itemized as follows: Residence $9,900; lot $3,000; enhancement of the lot by the presence of the ornamental timber thereon $200; and increased value resulting from landscaping $400.
Unquestionably Mr. Hebert possessed considerable personal knowledge of real estate market conditions and trends in the area. The record shows that in reaching his conclusions he alluded, from memory, to numerous sales which he considered com-parables and of which he was cognizant because of his having made appraisals in connection therewith. His testimony in this regard is bitterly attacked by esteemed counsel for the Department on the ground that Hebert either did not specifically identify the so-called comparables upon which he relied or that the transactions referred to were not, in fact, comparable to subject property. We believe, however, the record amply shows Mr. Hebert possesses considerable knowledge and experience in dealing with and appraising real estate in the general area of subject property and reject the contention of counsel for the Department that we should disregard his testimony in its entirety.
Thomas G. Womack, Sr. testified he has been a real estate broker in Hammond, Louisiana, for the past eleven or twelve years prior to which time he was engaged in the real estate business in Kentwood, Louisiana. He has appraised property in almost every parish in the state and has listed and sold properties in the area in question. In addition to his engagement in the real estate business as an individual he . has worked as a right of way agent for the Department and has made appraisals for the Louisiana Power and Light Company. Shortly prior to the trial of this cause he was employed by plaintiff herein to appraise property situated in Tangipahoa Parish.
Relying entirely upon his personal knowledge of the local real estate market, Wo-mack valued the property to be taken at a total of $17,774. Using a replacement value of $6 per square foot, he appraised the residence at $10,890. He valued the land at a total of $6,884, allowing $6,000 for the property, $500 for an artesian well situated thereon and $384 as augmented value resulting from the landscaping by defendant. Mr. Womack frankly conceded he did not consider comparables in assessing the property but rather relied upon his knowledge of real estate in the general vicinity and his. preference of appraising on the basis of replacement value. While replacement value may be considered in appraising improvements, market value of improvements, is best determined and established by consideration of recent sales of similar property in the same vicinity. Womack’s appraisal though admittedly not based on the most acceptable standards is not entirely without foundation nor does it strike us as. being insincere or utterly lacking in good sense. Viewed in the light of the witness’’ experience and extensive knowledge of real' estate in the area, we consider his method', of approach does not render his testimony-totally unacceptable but rather addresses, itself to the weight to be accorded thereto..
Robert E. Perrin, called as an appraiser by defendant owner, testified he has been engaged in the building and contracting business in Ponchatoula, Louisiana, for approximately 50 years. For a period of six years he served as appraiser for a building and loan association making numerous appraisals in the Ponchatoula area. He appraised the property at a total of $17,860, valuing-the dwelling at $11,360, predicated upon replacement value which he determined by analyzing in detail each piece of material required to reproduce the house and them *628 computing the cost thereof together with the estimated cost of the labor required for its construction or installation. Perrin allowed no depreciation because, the residence being in unusually good condition, he concluded replacement value to be the cost of reproducing the structure in its present state. Pie valued the land at $6,000 together with the trees and landscaping and the artesian well at $500. Because of his familiarity with and knowledge of the local real estate market, he considered the property possessed a ready market at the appraisal he placed thereon and for said reason he made no effort to compare his evaluation with recent sales of comparable properties.
The Department called two appraisers to testify on its behalf, namely, Max J. Derbes, Sr. and Carroll Trahan.
Mr. Derbes, a realtor-appraiser from the City of New Orleans, is a member of the American Institute of Real Estate Appraisers and various other professional societies. He has made appraisals for Shell Pipe Line Corporation, The Texas and New Orleans Railroad, the Louisiana Power and Light Company and various other similar industries. In addition to his extensive experience as an appraiser he has considerable experience in the building industry. Despite his impressive qualifications, by his own admission he is practically unacquainted with the local real estate market having throughout his entire career made only one appraisal in Tangipahoa Parish. In making his appraisal, he relied in large part upon data collected by and information obtained from Mr. Carroll Trahan, a local resident of limited real estate experience and with little more knowledge of the local market than Derbes himself.
Mr. Derbes valued the property taken at $8,902, which he determined in the following manner: The replacement value of the residence he estimated at $6 per square foot or $10,422, less depreciation of 33y¡¡% or $3,474 or a net of $6,948. On the basis of $600 per acre for the land, he valued the .873 acres taken at the sum of $524. The timber to be destroyed he valued at $500, and in addition he allowed $930 for other improvements consisting of landscaping, fencing and the artesian well. Plis market value appraisal was based primarily upon his consideration of other sales of property in Tangipahoa which he deemed compa-rables. Although he explained the transactions he used as comparables referring to the dates and recordation data thereof, as in the case of Mr. Hebert, who testified for defendant, none of the transactions were introduced in evidence.
We agree with the conclusion of the learned trial judge who found that she could not rely entirely upon the “market data” approach based 'on the comparables mentioned by Mr. Derbes for the reason that many of said transactions involved properties several miles distant and in an entirely different locality. In fairness, however, it should be said that Mr. Derbes did refer to one or two properties of somewhat similar nature in rather close proximity to defendant’s land.
Although we are inclined to place considerable weight on the testimony of an expert with the qualifications and experience of Mr. Derbes, the evidence in the case at bar does not justify our complete reliance thereon to the exclusion of the testimony offered on behalf of defendant.
We concede that market value approach based on comparables is the most accurate and desirable method of appraisal in expropriation proceedings but where such method fails, or is inconclusive, other methods may be employed. Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541.
Mr. Carroll Trahan, who collaborated with Mr. Derbes, and upon whom Derbes relied for the assimilation of market data, testified he has been engaged in the real estate business part time (50%) for the past *629 three years as he also operates an insurance agency. For a period of approximately 12 years he has bought and sold property in the Hammond area for his own account. As a realtor he has handled some 50 transactions and made six appraisals only two of which were in the vicinity of defendant’s property. He readily conceded he was not an expert appraiser, however, the trial judge permitted him to testify as such, the court reserving the right to weigh his testimony in the light of his experience. Mr. Trahan worked closely with Mr. Derbes (a fact which neither adds to nor detracts from the weight to be accorded his testimony). He used the same comparables as Derbes but arrived at his conclusions separately and independently from Derbes. Trahan valued the property at $10,280, the well separately at $740 and the two barns (hereinafter discussed in our consideration of severance damages due) at $896. Apparently these latter figures were not included in his appraisal of the house and property, therefore, his total appraisal would seem to be $11,020 for the property and the additional sum of $896 severance damages.
All the witnesses agree that the locations of the two barns situated on defendant’s remaining property are such that their removal will be necessary in order that defendant’s remaining property may be put to residential use (its admitted best and highest use). They further agree that the value of the remaining property is diminished to the extent of the cost of removing and relocating said structures which removal cost is acknowledged to be virtually the same as their value. Mr. Derbes valued the barns at $878. Mr. Trahan arrived at a figure of $896 by computing the replacement value of one on the basis of $3 per square foot less depreciation of 60% and •determining replacement value of the other to be $3.50 per square foot minus depreciation of 70%. Mr. Perrin estimated replacement cost of the barns to be $3 per .square foot.
The trial court awarded severance damages in the sum of $1,463 on the basis that the sum of $2 per square foot represented a fair replacement cost for the barns. Taking this unit price and multiplying same by the number of square feet in each structure and deducting therefrom 50% for depreciation, she arrived at the aforesaid amount of severance damages. Since all witnesses agree the remainder of the property cannot be utilized for residential purposes unless the barns are removed (there being no room for construction of a new residence between the barns and the relocated front property line) and all further agree the cost of removal is substantially the same as present value, we find the award for severance damages amply justified. The $2 per foot replacement cost is well in line with the appraisals of both sets of appraisers and the depreciation factor of 50% appears reasonable considering photographs of the barns appearing in the evidence show said structures to be in a state of fairly good preservation and repair.
There appears to be no serious dispute over the district court’s award for the landscaping and the artesian well which items, incidentally, were valued more highly by the Department’s experts than those called on behalf of defendant.
Plaintiff most vigorously disputes the valuation placed by defendant’s witnesses on the residence and lot and particularly the failure of defendant’s witnesses to deduct depreciation from the value placed on the improvements. The record shows, however, that whereas defendant’s experts did not employ an arbitrary depreciation factor, they valued and appraised the dwelling in its present condition which in effect makes allowance for age and depreciation.
On the other hand, plaintiff’s expert, Derbes, deducted one-third for depreciation from a replacement value estimated at $6 per square foot. The record fails to show wherein he substantiated said figures with evidence of current building costs. As *630 previously stated, defendant’s witness, Per-rin, determined replacement value at $11,-360 by itemizing each piece of material required in its construction and then computing the cost of all said materials and the labor to construct, install and fabricate same.
The references to alleged prior sales of comparable property in the vicinity used by Mr. Derbes as well as those referred to by Mr. Hebert were of little assistance to the court in the case at bar. The amount of compensation due defendant is the market value of the property taken on the date of its expropriation. Numerous alleged comparables cited by both sides were either not in the same vicinity or of the same character of property as subject property. The single possible exception was one cited by Derbes which involved some unimproved nearby acreage sold several years previously.
In view of the circumstances shown, we consider the following language appearing in State Through Department of Highways v. Barber, 238 La. 587, 115 So.2d 864, 866, pertinent to the case at bar:
“Where there have been no sales of similar property in the vicinity of the property sought to be expropriated, other circumstances and factors must be explored in order to discover true value. Among these other factors some consideration may be given to replacement cost less depreciation, provided it is reflected in the price the property would bring on the market at the time of expropriation.”
 The opinion of each witness qualified and accepted as an expert should be given effect when it appears well grounded from the standpoint of sincerity and good reasoning. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State of Louisiana through Dept. of Highways v. Glassell, 226 La. 988, 77 So.2d 881; City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812; State v. Landry, 219 La. 456, 53 So.2d 232; Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So.2d 37. This is precisely what the learned trial court did in the case at bar. The testimony of neither side was accepted to the exclusion of the other. It appears, the testimony of the several experts was. properly weighed and considered in the light of their individual background, experience, knowledge, and reasoning and some effect given to the testimony of each witness. The action of the trial court in this regard was without error and accordingly, the-judgment is affirmed.
Affirmed.