147 So.2d 905 (1962)
STATE of Louisiana through the DEPARTMENT OF HIGHWAYS
v.
William W. BJORKGREN.
No. 5645.
Court of Appeal of Louisiana, First Circuit.
November 9, 1962.
Rehearing Denied December 14, 1962.
*906 D. Ross Banister, Gen. Counsel, Dept. of Highways, and Jesse S. Moore, Jr., Asst. to Gen. Counsel, Baton Rouge, for appellant.
Edward B. Dufreche, Ponchatoula, for appellee.
Before ELLIS, LOTTINGER, HERGET and LANDRY, JJ.
HERGET, Judge.
This is an expropriation proceeding instituted by the State of Louisiana through the Department of Highways in December, 1957 condemning for highway purposes three parcels of land in Tangipahoa Parish, Louisiana, comprising almost ten acres of land designated on a map attached to the petition as (1) Parcel 48 .007 acres; (2) Parcel 48-A .082 acres; and (3) Parcel 48-B 9.642 acres, taken from a larger tract owned by defendant, William W. Bjorkgren.
The Department deposited in the registry of the court $1,690 as its estimate of just compensation predicated upon the appraisal of the land and improvements at $1,690; damages: none; thus, $1,690 as the total estimate of just compensation. In his answer, Defendant averred the value of the land expropriated was $10,000 and further made claim for damages to the remaining property as follows:

 "a. Relocation of barbed wire
 fence $500.00
 "b. Relocation of Water Well
 & Water System for
 rental house 500.00
 "c. Severance of the property
 of respondent (Highway
 is limited access
 through entire length
 of respondent's property.) 3,000.00
 _________
 "TOTAL $4,000.00"

asserting a total claim of $14,000 as representing the value of the land and damages sustained by him as a result of the taking.
From a judgment awarding Defendant the sum of $8,798.25 the Department appealed. Defendant, in his brief filed in this Court, prays for an increase in the award; however, as no answer to the appeal is noted in the record, such cannot be considered.
In support of his claim, counsel for Mr. Bjorkgren called as expert appraisers Mr. Polk Hebert and Mr. Thomas G. Womack, Sr. Mr. Hebert, in response to the question as to the improvements located on the property, answered: "None that I could *907 tell." He placed a value on Parcel 48-B, containing 9.642 acres, of $8,300; Parcel 48-A, $500, and Parcel 48, $100. Though he expressed the view because the highway severed the property remaining to Defendant that certain damages would result therefrom, in response to a query for an estimate of the amount of such damages, answered: "I would have to make a study of it." He made no estimate of any damages resulting from the taking. He was of the opinion the land, although being farmed at the time of the taking, was not farm land; he did not value it on an acreage basis but in this particular case he used a "grid" to determine the useable part of the subject property that could be developed for homesites and though he referred to such method, no such grid was offered in connection with his testimony. Digressing from a discussion of his testimony for a moment, Mr. Carroll Trahan, Senior Right of Way Agent for the Department of Highways, testifying as an expert appraiser on behalf of the Department was of the opinion the subject property was best suited for farm land and affirmatively related at the time of the taking some portion of it was in a pine tree farm, the trees being approximately one foot high. Though Mr. Hebert stated his appraisal was based upon comparable sales in the area, the sales he referred to were of small lots, not comparable for valuation purposes of acreage such as here involved. He referred to what is noted in the evidence as the Berner sale, in 1955, of 3½ acres located 1000 feet from the subject property, across the highway, for $200 per acre. Accepting this property as being comparable to the subject property, we cannot comprehend upon what theory he then would place a value of $800 per acre on the subject property.
Mr. Womack, the other expert called by Defendant, appraised the property as a whole, attributing thereto 9.73 acres, which he valued at $800 per acre and $500 for the loss of an artesian well on the property, making a total of $8,284. He arrived at the value of the well because, he related, Defendant had informed him the depth thereof and that he had paid $1 a foot for it. He did not measure the well himself and he observed: "* * * you have to take the man's word for that." Though Mr. Womack testified he was definitely of the opinion damages would ensue to Defendant's remaining property because the highway severed it, he did not give any estimate of such damage. He was of the opinion the land being high and well drained was best suited for residential purposes, same being located near two paved highways the Springfield Road and the Wadesboro Road. He observed the surrounding area was becoming increasingly residential, but he offered no comparable sales as the basis of his appraisal, his opinion resting on his general knowledge of land values in the area.
As heretofore noted, Mr. Carroll Trahan was called as an expert appraiser by the Department. He divided Parcel 48-B into two portions: (1) a portion containing 5.042 acres he valued at $125 per acre, same being low, swampy area near a canal traversing the property; (2) for the remaining 4.6 acres, which he described as the highest part of the land next to the Wadesboro Road, he placed a value of $200 per acre, making a total valuation of the 9.642 acres of $1,550. To arrive at his valuation he used as comparables a sale by Mr. Bjorkgren to Louisiana Power and Light Company and a sale by Jenny Jacobs to Cigard Goudeau. As to the Jacobs to Goudeau sale, which was on the Springfield Road about 3 miles west of the subject property, which, in his opinion, was superior to that of the property of Mr. Bjorkgren, he placed a value of $250 for the land, less improvements. He referred to a sale from Cutrer to Staub, in 1953, for the sum of $100 per acre as a comparable utilized by him in arriving at his valuation of the subject property. He valued Parcel 48-A, the .082 acres, at $250 an acre, attributing to the portion expropriated a value of $21. He valued Parcel 48, consisting of.007 acres of land, at $600 an acre, giving *908 a value thereto of $4.20 which he recommended be fixed at $10.
The Department called as its other expert appraiser Mr. Max J. Derbes, Jr., who also divided Parcel 48-B into two portions, appraising the front portion consisting of 4.6 acres at $250 per acre and the rear 5.042 acres at $125 per acre. He attributed to Parcel 48 a valuation of $4.20 predicated on a basis of $600 per acre for .007 acres. Parcel 48-A he valued at $300 per acre and for the .082 he gave a value of $8.20. His total valuation of the land expropriated was $1,792.40 which he rounded out at $1,800. In arriving at his values Mr. Derbes was of the opinion Parcel 48-B, being about one quarter of a mile from the Springfield Road on the Wadesboro Road, was suitable for residential development and used as comparables the Berner sale referred to by Mr. Hebert at $200 per acre and a sale by Mr. Bjorkgren to Pea, in 1953, of six acres for $1,100. He referred also to the Ebrecht sale to Louisiana Power and Light Company, in 1954, of $600 per acre, but he was of the opinion the Ebrecht property being located on the Springfield Road was far superior in value to the subject property located on the Wadesboro Road.
Counsel for Mr. Bjorkgren, over the objection of counsel for the Department, offered the records in the suits entitled Louisiana Power and Light Company v. Peter Kraft, Sr.; Louisiana Power & Light Company v. Carl Drude, Sr.; Louisiana Department of Highways v. Joseph E. Ebrecht, Jr.; and Louisiana Department of Highways v. Ebrecht, La.App., 135 So.2d 624, as evidence for the determination by the court of values in comparable locations with the subject property. The trial Court overruled the objection; however, no evidence was offered by counsel for Defendant to prove the comparability of the properties referred to.
In its written reasons for judgment the trial Court noted the subject property was close to the intersection of the Springfield Highway with the new Interstate Highway or Hammond By-Pass as well as the Wadesboro Road and, accordingly, was of the opinion the sale on the Springfield Road from Ebrecht to Louisiana Power and Light Company for $600 per acre should be considered as comparable in value to the subject property. The trial Court based the valuation of Defendant's property by resorting to the opinion in the case of Louisiana Power & Light Company v. Tricou, La.App., 128 So.2d 24, introduced in evidence by Defendant over the objection by the Department, in which this Court accepted a value of $750 per acre for the Tricou property located west of the subject tract approximately half way between Ponchatoula and Hammond on the Happywoods Road. The Tricou property fronted one-half mile on the Springfield Road, whereas Parcel 48-B of the subject property has only a frontage of approximately 70 feet on the Wadesboro Road and 48-A only 20 feet frontage on the opposite side of the same road. The Department's objections to the use by the trial Court of the Tricou case to arrive at the evaluation of Defendant's property are: said property is not comparable as it is too far distant from the subject property and has a far greater frontage on the road. Though the Tricou sale was admissible in evidence and represents a judicial determination of the market value of the property therein involved, it is essential that testimony be placed in the record to prove the comparability of the two properties, for otherwise there is no evidence of the comparability by which the Court can fix the market value of the subject property.
With exception of the Berner sale for $200 per acre and the Ebrecht sale for $600 per acre, none of the other sales relied on appear to be comparables for they represent sales of small lots, improved properties, or sales which took place at remote times from the date of the present condemnation proceeding. Mr. Derbes, in his testimony, gave explanation of why there was such variance between the prices of the Berner *909 and Ebrecht sales, relating the fact that the Berner property is located on the Wadesboro Road whereas the Ebrecht property is located on the Springfield Road, a much more traveled highway. We note, however, that Defendant's property, while fronting on the Wadesboro Road is only a short distance from the Springfield intersection. The Berner sale took place in 1955, whereas the present proceeding was filed in 1957 and, while in our opinion the properties are comparable, there is in evidence the testimony of Mr. Hebert to the effect that prices in the area involved had in some places doubled and in others tripled between the dates of 1955 and 1957. In making this observation, however, Mr. Hebert did not refer to any specific sale; nevertheless, because of his general knowledge of the values of real estate in the area, we are persuaded to accord his opinion in this respect great weight. Using the Berner sale as truly comparable and giving consideration to the topography of Parcels 48-B and 48-A on the Wadesboro Road, some of which is high and some low, we are of the opinion the evidence justifies an award of $400 per acre for the 9.724 acres or $3,889.60. Parcel 48 containing .007 acres, though impracticable to value on a per acreage basis, in view of the fact it is located at the junction of a long, narrow strip of land reserved by Defendant as a servitude for the purpose of ingress and egress to his property south of it, is valued at $100.
No evidence was offered as to the relocation of the barbed wire fence, and the proof insofar as the artesian well is concerned and the damages to the remaining property of Defendant is insufficient and inadequate upon which to base any value. Inasmuch as the Defendant in expropriation proceedings must sustain the burden of proving his claim for damages in excess of the estimated compensation deposited in the registry of the court, LSA-R.S. 48:453; State of Louisiana, Through Department of Highways v. Levy, 242 La. 259, 136 So. 2d 35, such claims are rejected.
It is now well settled law in Louisiana that the most effective and reliable rule to be used by the court in fixing values of property expropriated is the utilization of comparable sales, and where comparables are available the resort to other methods of evaluating the property, such as opinions of experts based on general knowledge become secondary.
For these reasons the judgment of the trial Court is amended so as to reduce the principal amount of judgment in favor of Defendant to the sum of $3,989.60. In all other respects the judgment is affirmed.
Affirmed as amended.
HERGET, J., concurs and assigns written reasons.
REID, J., recused.
HERGET, Judge (concurring).
Counsel for the State in their brief maintain that:
"3. In an expropriation proceeding, the proof on which the judgment must rest arises from testimony of witnesses who testify in the case.",
citing as authority State Through Dept. of Highways v. Kemp, La.App., 141 So.2d 487.
The author of this opinion was the trial Judge of the Kemp case, supra, and was a member of this Court when the case was considered on appeal. At the time the case was before us the Court was sitting in separate panels and the case was decided by a panel of which I was not a member. Having been the trial Judge, however, if the matter had been submitted to the panel on which I was assigned, I would have recused myself from consideration, deliberation or review of the case on appeal. With our learned and esteemed brother, Judge Landry, as the organ of the Court, we said:
"Sales to an expropriating authority made under threat of condemnation for *910 public use may be considered in determining market value of property to be expropriated but such transfers are not controlling as comparable transactions. State of Louisiana Through Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93. We believe the foregoing principle equally applicable to those instances wherein market value is fixed by judicial decree in an expropriation suit." (Emphasis supplied.)
Concededly, sales made to an expropriating authority under threat of condemnation though admissible are not controlling in arriving at the value of property being expropriated inasmuch as same cannot be categorized as sales between willing sellers and willing purchasers. I cannot, however, agree with the conclusion that such principle is equally applicable to those instances wherein market value is fixed by judicial decree for the obvious reason the value fixed by the court in an expropriation proceeding is the court's opinion of the market value of the property; so that upon the ascertainment of such value when evidence is offered of the comparability of the property expropriated with that of the property which is the subject of the expropriation proceeding before the court, and especially where it is testified by a qualified expert appraiser the properties are similar and of equal value, the comparability of the properties is apparent and the value so fixed is the market value of the property expropriated.
The evidence in regard to the comparability of the Mears and Kemp properties was placed in the record by the trial Court's interrogation in open court of the expert appraiser when sworn as a witness and it was the trial Court's opinion the witness's answers thereto were given in serious consideration of the comparability of the two properties to aid the Court in fixing a just award in the Kemp case. We said in the Kemp case:
"In view of the foregoing evidence appearing in the record we find considerable merit in the contention of learned counsel for the state that with respect to the value of the improvements situated upon defendants' property our esteemed brother below completely rejected the opinions of the experts who testified in this case and substituted his own in place thereof. * * *
"Assuming, arguendo, the testimony of Roseman relative to the Mears transaction (resulting from said witness's discussion thereof under interrogation by the trial judge) was properly of record and appropriately considered by the learned trial Court, said evidence, standing alone, did not, in our opinion, justify the trial court in valuing the improvements on defendants' property in the sum of $4800.00 notwithstanding the highest expert valuation thereof in the sum of $500.00. Granting further, solely for argument's sake, that the Mears sale had been properly introduced in evidence herein, it would not be conclusive of the value of either subject property or the improvements situated thereon. At best, said transaction, although involving similar property situated in the same block as that of subject lot, constitutes only another comparable to be considered and weighed by the court along with all of the evidence of record herein."
It is impossible for me to conceive under what theory testimony elicited by the court's interrogation of a sworn witness in the trial of a case is denominated "discussion"not evidenceand the propriety of the court's consideration of such testimony questioned. All of the testimony elicited from questioning a sworn witness on direct, on cross, or by the court, is evidence upon which the court must base its decision.
It so happened Mr. Roseman who testified as an expert appraiser witness for the State in the Kemp case also testified as an expert for the State in the Mears case and therefore had made detailed study of the two properties to arrive at his expert opinion *911 of their values. Although while appearing as a witness on direct examination in the Kemp case he valued the lot at $550 a front foot and placed a value on the improvements of $300 which he said represented the salvage and though he revealed he likewise made the same valuations in the Mears case, he opined the Kemp property improvements had a greater salvage value. Nonetheless, it was his expert opinion the properties were of equal value and, accordingly, such being so, his expression to that effect is an expression of his opinion that the values of $600 per front foot and $4800 for the improvements on the Kemp property represented the true market value.
We said in the Kemp case:
"We find, however, that in awarding defendants the additional sum of $4800.00 for the improvements involved, the esteemed judge of the trial court did so arbitrarily and in disregard of the expert testimony in the record. On this item the record justifies an award of only $500.00 and the judgment of the trial court will be amended accordingly."
In that case, cited supra, it will appear from the quoted portion of the trial Court's opinion, the trial Court affirmed it considered the testimony of all the experts who testified in the case in arriving at the valuation placed on the property but gave greater weight and effect to the testimony of the witness who had inspected and appraised both properties and who stated the properties were of equal value. It appears this Court would place an impossible task on the trial courts to give effect to the testimony of all of the experts when, though well grounded from the standpoint of sincerity and good reason, their appraisals are so variant. Furthermore, any admissible evidence relevant to an issue before the court which assists it in arriving at an opinion in fixing the market value of property expropriated whether same be the testimony of experts or laymen is properly to be considered by the court; elementary, however, that the views of experts in any field are given more effect. The court's value of property is the value it believes to be the market value of the property expropriated and is not of necessity the same as that opined by the experts, though, in arriving at such value, the court must base its opinion on the testimony in the record. Thus, the comparability of the Mears and Kemp properties having been established by the testimony of the expert appraiser for the State; there being offered no evidence contra or evidence questioning the expert's view that the two properties were of equal value; the trial Court being satisfied such value did in truth and in fact represent the market value of the two properties; it accepted the value fixed by the Court in the Mears expropriation proceeding as the market value of the property then under consideration in the Kemp case.
As to the improvements on the Mears and Kemp properties, both being in the same block and, as Mr. Roseman testified, subject to the same restrictive property regulations in the use to which they could be placed, the conjecture indulged in by this Court as to the reason for the variance in valuation of the Mears and Kemp properties is without basis. Apparently the Department was in accord with the values fixed in the Mears case for no appeal was taken from the judgment of the trial Court.
I am of the opinion that where property has been expropriated and a market value fixed by the court therein and evidence is offered by an expert appraiser or other reliable witness that the expropriated property is of equal value with the property subject to expropriation, such evidence may be relied on by the court as establishing the market value of the subject property. Certainly, in all fairness to litigants, where two properties are shown to be of equal value, it would be unjust to award either owner a different amount.
For these reasons I concur.