143 So.2d 761 (1962)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Peter Frank KURTZ, Jr., et ux., Defendants-Appellees.
No. 5312.
Court of Appeal of Louisiana, First Circuit.
April 23, 1962.
*762 D. Ross Banister and Glenn S. Darsey, by Glenn S. Darsey, Baton Rouge, for appellant.
Elton A. Darsey, Houma, for appellees.
Before ELLIS and HERGET, JJ., and MILLER, J. pro tem.
MILLER, Judge pro tem.
The Department of Highways of the State of Louisiana brought this suit to expropriate for highway purposes the south half of Lot Five (5) of Block Seventeen (17), Honduras Addition to the City of Houma, the whole parcel measuring 60 feet front on Center Street by a depth of 60 feet, together with all improvements, from Mr. and Mrs. Peter Frank Kurtz, Jr. This one-half lot was all of the property owned by defendants, so there is no question of severance damages. On May 26, 1958, the plaintiff deposited in the Registry of Court $5,800.00 which allegedly represented the *763 just compensation for said property. Defendants opposed the valuation represented by said deposit and prayed for judgment fixing the value of the property taken at the sum of $12,327.12. After trial there was judgment fixing the value of the property expropriated in the sum of $7,250.00 representing an increase over and above the amount paid by plaintiff to the extent of $1,450.00, with interest. After depositing the additional amount represented by the judgment, plaintiff devolutively appealed therefrom. Defendant has answered the appeal and seeks to have the award increased to $9,000.00, and to have the defendants' expert witness fees increased from $50.00 to $100.00 each.
Before this court, in brief, and particularly in oral argument, plaintiff has strenuously urged error on the part of the district judge in permitting the defendants, in presentation of their case in chief, to call, under cross-examination, expert appraisers who were employed by plaintiff for the purpose of making an appraisal of the expropriated property, the value of which is here questioned. The two appraisers who were questioned by the defendants' counsel under cross-examination were Mr. Charles D. Chauvin and Mr. Daniel B. Eells. Both had been employed by the plaintiff to make appraisals of numerous properties which were to be expropriated for the same purposes and at the same time as the subject property, and were specifically employed to and did appraise the subject property for the plaintiff. Their appraisals were rejected by the plaintiff and neither Mr. Chauvin nor Mr. Eells signed the estimate of just compensation annexed to the plaintiff's petition. Neither Mr. Chauvin nor Mr. Eells was summoned or otherwise requested to be present by the plaintiff, but both appeared at the trial in answer to a subpoenae issued by the defendant calling each to appear for cross-examination. When each was called, the plaintiff announced that it did not intend to call him as a witness, and objected to his being questioned under cross-examination. Both Messrs. Chauvin and Eells were placed under cross-examination without having been previously interviewed by the defendant and without the defendants having any prior knowledge as to what testimony they might give.
Plaintiff argues in his brief that
"* * * a definitive decision (should be) rendered by this Court as to whether an expert witness or appraiser can legitimately be called as a witness on cross-examination under the terms of the applicable statute.[1]
Moreover, an expert witness whose professional opinions are required and paid for by the party requiring such services cannot reasonably or logically be construed as `the particular agent or representative,' since such party is not an employee, representative or agent of the plaintiff in this case; such an expert witness or appraiser is an independent party engaged in a profession whose professional and expert opinion or conclusion of value is purchased by the expropriating authority; such a witness can not be bound or controlled in his professional engagement or activity by the party requiring the expert services and, on the contrary, the party requiring such services can not be bound by the expert in performing its public function.
* * * * * *
"It should be noted also that to permit a witness to be called for the purpose of cross-examination as to opinions or conclusions by the opposing party without being properly qualified as an expert witness is improper and the cross-examination should be limited to factual testimony, since the opposing party has no valid right to qualify an expert witness on cross-examination nor does the court have such a right, *764 as was partially attempted in the instant case. To construe the situation otherwise is not only improper under the law but permits the opposing party or parties to obtain expert opinions or conclusions without paying for this type of testimony. It should be carefully noted in this case that the defendants in this case presented no opinions of market value other than those of Mr. Chauvin and Mr. Eells on cross-examination, except the wholly unsupported opinions of Mr. Glover, Mr. Le-Blanc and Mrs. Kurtz, one of the defendants, which direct evidence is far short of the obligation to sustain the burden of proof. Can this Court sanction a decision predicated on such evidence and where the statute under which this suit was instituted requires the defendants, in plain terms, to sustain the burden of proof?
"There appears to be no jurisprudence in Louisiana applicable to the issue of whether or not a purportedly expert witness, who is an independent contractor, can be subjected to cross-examination because such cross-examination is within the purview of R.S. 13:3663, since repealed and superseded by Article 1634 of the Code of Civil Procedure. The writer of this brief is not unaware of the wholly erroneous decision of the Court of Appeal, Second Circuit, in the case of State of Louisiana, Through the Department of Highways v. Dayton Cook et al. (1961), 124 So.2d 221, but, in any event, that case is not apposite to the issues here presented for the reason that the circumstances in which the current issues are included are not similar and there are major differences in the circumstances of these cases; * * *"
Counsel for plaintiff made no further effort to distinguish the Cook case from the instant one, and it is noted that the plaintiff's application to the Supreme Court for writs in the Cook case was denied. Furthermore our brethren of the Second Circuit have since followed the Cook case in the case of State of Louisiana, Through Department of Highways v. Milam (La. App.1961) 130 So.2d 145. Apparently there was no application for writs made in that case.
To sustain its contention, plaintiff cites the cases of Daigle v. Mayor, etc., Town of Rayne, 222 La. 556, 62 So.2d 833, and Succession of Moody, 227 La. 609, 80 So.2d 93. In our opinion, these cases are not applicable. In the Daigle case, it was held that election commissioners, although appointed by the mayor and board of aldermen are not their representatives. The court held that "Their agency relationship, if one existed, is with the entire electorate." In the Moody case, it was held that domestic servants may not be called on cross-examination merely because they are employees of the opposing party. The information to be elicited from the servants had to do with the physical condition of the decedent before her death.
But in the instant case, the appraisers were employed by the plaintiff to appraise the very property which is the subject of this dispute. The sole issue before the trial court was the value of the property at the approximate time that these appraisers made their appraisal. The plaintiff employed them for the specific purpose of obtaining their expert opinion as to the value of this property.
The relevant statute is LSA-R.S. 13:3663, which provides in part that:
"Where any of the parties litigant is an individual, a corporation, partnership or other legal entity, the parties examining shall be entitled to examine * * * the particular agent or representative of such * * * legal entity having or having had knowledge, charge or supervision in whole or in part of the matter in question, whether or not such party is at the time an agent or representative or member of or otherwise connected with such individual, *765 corporation, partnership or other legal entity."
We are in complete agreement with our learned brothers of the Second Circuit in their statement in the Cook case, supra, that:
"It would be difficult for us to conceive of any more explicit and self-explanatory wording of purpose and intent in any legislative enactment. In the instant case the party called for cross-examination was an expert appraiser employed by plaintiff, who unquestionably possessed specific `knowledge * * * of the matter in question * * *.'"
We agree that expert witnesses such as Messrs. Chauvin and Eells are independent parties engaged in a profession whose professional and expert opinions may not be controlled by the party employing them. However, once the plaintiff has employed such an expert for the purpose of appraising certain property, the expert is its agent or representative insofar as that appraisal is concerned. We further agree that the expropriating authority cannot be bound by an expert simply because the expert has been employed. Nevertheless, the information which has been developed by such an expert is admissible in evidence under the provisions of LSA-R.S. 13:3663 and will be evaluated by the court in accordance with the same rules applied to all experts.
We are at a loss to understand plaintiff's argument that Messrs. Chauvin and Eells were questioned "without being properly qualified as an expert witness * * * and the cross-examination should be limited to factual testimony." Both of these witnesses testified as to their qualifications and it is apparent that they meet the standard for qualification as an expert. While their qualifications were not so impressive as those of the plaintiff's principal expert Mr. E. Holland Johnson, their opinions are valuable from the standpoint that they are most familiar with local valuations.
Defendants purchased the 60 x 60 lot, which plaintiff is here expropriating, for $2,000.00 on September 30, 1947. The house was built during the last three months of 1947. It was described as a frame house, asbestos shingles, four rooms and a bath, corrugated iron roof, no gutters, a single floor, and built on single concrete piers. The exterior was in good condition and the interior was in fair condition. The kitchen had a single pan sink and drain, but there was no hot water heater in the house. The house was served with gas, electricity, water and sewerage. The floor space measured 575 square feet of living space and 124 square feet of porches. The front of the house was located less than 10 feet from the front line of the lot.
A summary of the determinations of value given by the witnesses who gave such opinions are as follows:

 NAME IMPROVEMENTS LAND TOTAL
 Daniel B. Eells $5,356.00 $1,500.00 rounded to
 $6,900.00
 John H. Glover 4,828.00 3,000.00 7,828.00
 Donald LeBlanc 5,613.72 --- ---
 Mrs. Peter F. Kurtz --- --- 12,300.00
 Charles D. Chauvin 4,870.00 2,400.00 7,270.00
 E. Holland Johnson 3,983.00 1,800.00 rounded to
 5,800.00
 J. Louis Blouin 3,275.20 2,500.00 rounded to
 5,800.00
 Trial Court held 4,950.00 2,300.00 7,250.00

*766 Daniel B. Eells questioned under cross-examination by the defendants, testified that his profession was that of an independent fee appraiser and construction inspector of residential property; that he has been an appraiser for five years and was a charter member of the Residential Appraisal Society of New Orleans; that most of his appraisals have been in the cities located in Lafourche and Terrebonne Parishes; that he has appraised for the Veterans Administration, FHA, and insurance companies; that he was retained by the Highway Department to make appraisements on the tunnel project in the Parish of Terrebonne on a fee basis; that in connection with this employment he inspected the premises of Mr. and Mrs. Peter Frank Kurtz, Jr. He gave a detailed description of the property and concluded after a most detailed inspection and careful computations that the value of the land was $1,500.00 and of the improvements was $5,356.00. Mr. Eells confirmed his computations by the use of comparables. Since there were no comparable sales in the immediate area, Mr. Eells used those in nearby areas. His first was a sale from Broussard to Authement conveying Lot 8 of Block 6 Honduras Addition (60 × 122.2 feet), passed on March 26, 1958 with a recited consideration of $6,000.00. His second was a sale from Pitre to Glasson conveying Lot 4 of Block 26 (62.5 x 180 feet) in the same subdivision passed on March 18, 1958 for a recited consideration of $3,000.00. His third comparable was a sale from Gaudet to Michel conveying a corner lot at the corner of Dun and Dewey measuring 60½ feet by 180 feet, passed on February 25, 1952 for $1,500.00. His fourth was a sale from Daspit to the City of Houma conveying property on Verret Street measuring 538.40 feet on its West line by 446.40 feet on its East line by 158.79 feet on its South line. This sale was passed on January 26, 1956 and the price paid was $29,700.00. His last comparable was a sale dated August 27, 1955 from Smith to Glover conveying lot 9 of Celestin Addition measuring 60 by 120 feet on Short Street for a price of $1,400.00. After making adjustments which were explained in detail, he concluded that the property had a market value of $6,900.00.
Mr. John H. Glover, Sr. testified that he has been in the real estate business since 1944; that he has never taken any courses in appraisal work; that his appraisal was primarily based on replacement cost less depreciation; that he was originally contacted by the defendants in their effort to find another home and "Mrs. Kurtz just asked me to come over and give an appraisal on it and at that time I was trying to sell her a house." To value the land Mr. Glover used some comparables, but was unable to give specific data concerning this phase of his testimony. He concluded that the lot was worth $3,000.00 and the improvements were worth $4,548.00, for a total of $7,828.00.
Mr. Donald LeBlanc testified that his business or occupation was that of draftsman and estimator for Terrebonne Lumber & Supply Company; that he has been doing this work for twenty years; that
"* * * the only connection I have ever had in the case was to give these people a turn-key price on a completely new house of comparable size on a lot that they would purchase."
He testified further that his estimate for the cost of a new home was based on a floor space including porches of 827 square feet; that he did not measure the house nor make a detailed study of its condition; that the cost for replacement was $5,613.72. It must be noted that the house actually had only 699 square feet including porches, and that there was no hot water system in the Kurtz home. Although the record does not show that the house with which Mr. LeBlanc expected to replace the Kurtz home would or would not have a hot water system, it is apparent that Mr. LeBlanc's estimate must have included such a system.
*767 Mrs. Peter Frank Kurtz, Jr., testified at length concerning the trees and evergreens and concluded that the cost of "buying them and planting them and attending them like he (Mr. Kurtz) did I think they would be valued about $260.00 to me."; that the shrubs and flowering plants should be valued at $100.00; that she had made numerous efforts to find property located relatively close to Mr. Kurtz' work, but that she could find nothing for less than $8,000.00 per lot; that she valued her property at $12,300.00.
Charles D. Chauvin, questioned under cross-examination by the defendants, testified that he has been in the real estate business for seven years; that he has been qualified as an expert in numerous court hearings; that he has made appraisals for banks, for the police jury, for tax purposes, for the FHA, the Veterans Administration, and for insurance companies; that he belongs to the New Orleans Real Estate Board; that he was employed by the Highway Department to make the same appraisals as was Mr. Eells and did appraise the subject property under that employment; that his appraisal of the entire property was "$7270.00 of which $4870 represents the value of the house and property evaluation $2,400.00." Mr. Chauvin used two methods to find market value. He first computed the value by computing the square footage of the house and multiplying by $8.50 per square foot, which figure took into consideration the type of construction, its condition where is and as is. His second method was the comparable method. After counsel for the defendants referred to several specific sales, Mr. Chauvin testified:
"A. * * * to be frank about the situation in setting the value as far as this piece of property and the other piece of property is concerned the whole situation was taken as a whole. I am, of course, I am familiar with this property, because actually I had something to do with it. I'm familiar with the sale of the Davidson property on Dun Street. I'm familiar with other property in the City of Houma. I don't think I would have to make reference to any particular sale to have a knowledge of the transactions which have taken place in the City of Houma."
Mr. E. Holland Johnson was called a witness in behalf of plaintiff and testified that he has been a Realtor and appraiser for 33 years; that he has worked in the surrounding states as well as in most parishes in the State of Louisiana; that he is a member of the American Appraisal, MAI designated, American Appraisal Institute out of Chicago; a member of the Right of Way Association which has a chapter in Houston with the head office in California; that he was president of the Louisiana State Appraisal Society; that he is vice-president of the Appraisal Institute in New Orleans; that he has lectured on appraisal problems and real estate problems and has written articles on the subject; that he has appraised for insurance companies, the federal government, the state government, that he has appraised in Terrebonne Parish when the Navy was trying to acquire property around the Naval Base. Mr. Johnson's qualifications, his testimony, and his attention to detail were most impressive. In his opinion the replacement method is a poor method of finding the true market value because there are so many different estimates as to the cost of replacement and the depreciation factor is particularly difficult to compute. He preferred the comparable method which has the universal approval of all courts. His first comparable was a sale in 1954 of property at 530 Liberty Street from Begue to Cordre for the price of $11,200.00. The building had an area of 1517 square feet and the lot size was 52 feet 8 inches by 100 feet. Mr. Johnson had made pictures of the comparables he used but these were inadmissible in evidence for the reason that they were made at a time remote from the date of the sale. His second comparable was a sale of November 29, 1957 conveying *768 property at 504 Liberty Street for $9,500.00. The lot was 52 feet 8 inches by 100 feet and on it was
"* * * a concrete block building, 5 rooms and bath, 3 piece modern bath, kitchen sink, water heater in it, asbestos roof, galvanized iron gutters, concrete chain wall and piers, built 1950, interior walls sheetrock painted, concrete slab porch, also rear porch, building area was 1444 square feet."
In Mr. Johnson's opinion the comparable property was in a much better salable neighborhood judging by the houses. His third comparable was a conveyance of the property located next to the subject property which was acquired by amicable sale from the property owner to the Highway department. This property was located at 1216 Bond Street and had a square foot area of 713 square feet. The lot size was 60 × 70 feet, and the acquisition price was $6,150.00. Mr. Johnson's fourth comparable was property sold in 1954 located at 907 High Street. The house measurement was 1475 square feet and the lot had a frontage of 60 feet. Applying all of this information in a most detailed and logical way, Mr. Johnson concluded that the land was worth $1,800.00 and the improvements were worth $3,983.00 which he founded off to a total value of $5,800.00. During cross-examination, defendants' counsel spent a great deal of time in an effort to bring out the fact that certain improvements had been made to one of the properties between the date of the sale and the date when Mr. Johnson examined the property. In our view of the entire testimony, Mr. Johnson successfully defended the fairness of his appraisal.
Mr. J. Louis Blouin was called as a witness in behalf of plaintiff and testified that he has been a realtor for twelve years and has liven in Houma, Louisiana for the past ten years; that he has attended seminars to train him to do appraisal work; that he has appraised for the Veterans' Administration, for the police jury, in succession matters, and for various corporations; that he has testified in court as an expert on previous occasions and is a member of the Louisiana Real Estate Board and the National Association of Real Estate Agents. Mr. Blouin defined market value as the highest price in terms of money which a property will bring if exposed for sale in the open market allowing a reasonable time to find a purchaser who buys with the knowledge of all the uses to which it is adapted and for which it is capable of being used, neither purchaser or seller being under any compulsion to buy or sell. His inspection of the premises was made on April 30, 1958 and he valued the lot and improvements at $5,775.20 or rounded off to $5,800.00. Mr. Blouin gave a complete description of the property and concluded that his opinion of replacement value less depreciation came to the same amount as his opinion of the market value based on comparables. He valued the improvements at $3,275.20 and the lot together with trees and shrubbery at $2,500.00, or a total rounded appraisal of $5,800.00. Mr. Blouin used as his first and only specific comparable the sale previously described herein as the sale from Broussard to Authemant dated March 25, 1958. He testified that he reviewed a few others and that all indicated a front foot value of slightly less than $100.00 per foot for certain desirable property in Houma. Then Mr. Blouin listed the specific reasons which made the Kurtz property not so desirable and which reduced the $100.00 front foot value. He deducted $13.50 per front foot as the cost of paving the street, placing curbs and sidewalks on the property. The factors which further reduced the value and the percentage reduction were 10% because of the race influence in the neighborhood; 5% because the property was not in a zoned residential area; 2% because the property was in a static or declining area; 10% because of the visual approach to the area where the Kurtz property is located; 15% because the property was in an area which would make financing difficult. Although *769 he listed many other factors which might affect the value of the property in an adverse manner, Mr. Blouin did not further reduce the value. Applying these figures he arrived at a front foot value of $50.17 per front foot for a 60 × 120 foot lot. Since this lot was only 60 feet deep, Mr. Blouin reduced the appraisal by 30%. Thus the 60 × 60 foot lot of Mr. and Mrs. Kurtz was value at $2,100.00. The additional $400.00 valuation was added because of the shrubs, trees, flowers, sewerage connection, fence, clothes poles, and the general demand and marketability of that size lot in that area.
It has been made abundantly clear by all of the witnesses that there is no available similarly located or priced property to that of the Kurtz'. Mr. Kurtz does not own a car and walks from his conveniently located home to and from his work in the business section of Houma. The only property available for a price approaching that of the appraisers for the kurtz property is some two miles from the business section.
When the owner claims the value of the expropriated property is in excess of the estimate, he has the burden of proving his claim and he must produce convincing evidence that the value is in excess of that shown in the estimate on which the Department of Highways has made the deposit. LSA-R.S. 48:453; State Through Department of Highways v. McNeely, La. App., 130 So.2d 136; State Through Department of Highways v. Rownd, La.App., 119 So.2d 282.
The greater part of the evidence adduced at the trial consisted of opinions of experts, and on them the decision herein hinges. Testimony of this nature is admissible and is often resorted to in fixing value in expropriation proceedings. Moreover, the opinion of each witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoint of sincerity and good reasoning. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State v. Landry, 219 La. 456, 53 So.2d 232; City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812; State Through Department of Highways v. McNeely, La.App., 130 So.2d 136.
The application of the above principles, however, does not necessarily limit the court in its evaluation of the testimony, and it is free within judicial discretion to discover error and attribute proper weight and effect thereto. State v. Landry, 219 La. 456, 53 So.2d 232; State Through Department of Highways v. McNeely, La.App., 130 So.2d 136.
The compensation to be awarded shall be the market value of the property taken. The market data approach, where such data may be obtained, has been preferred by the courts for determining the market value. State of Louisiana, Through Department of Highways v. Havard, 239 La. 133, 118 So.2d 131, State v. Tramuta, 234 La. 741, 101 So.2d 450; State Through Department of Highways v. McNeely, La. App., 130 So.2d 136.
In many instances, however, comparable sales of properties in the vicinity which furnish the criteria for the market data approach are not available for arriving at the market value of the property taken, and in such instances other methods of valuation must be resorted to. However, regardless of the method used, the evidence will reflect differences of size, location, date of purchase, type of improvements, accessibility and other factors having some bearing upon the value of the property. It is therefore incumbent upon those witnesses who furnish the court with appraisals to make careful and detailed examinations of all of the comparables that can affect the market value of the subject property. State Through Department of Highways v. Hub Realty Company, 239 La. 154, 118 So.2d 364, State Through Department of Highways v. Tolmas, 238 La. 1, 113 So.2d 288; State Through Department of Highways v. McNeely, La.App., 130 So.2d 136.
*770 Applying these rules to the testimony in this case, we find that Mrs. Kurtz' appraisal must be disregarded for the reason that she did not have any market data on which to base her appraisal. At the same time we cannot help but be impressed by her careful but fruitless search for similar property.
The testimony of Mr. LeBlanc although unquestionably recognized to be most reputable and authoritative in his estimates of the cost of building, must be disregarded in any market data approach to finding the market value. Should we use the cost of replacement method, we would have to reduce his estimate for the reason that he anticipated building a larger building than was owned by the Kurtz, and for the further reason that there must be some depreciation factor applied to the type of construction found in the Kurtz home to show 10 years of usage.
Mr. Glover's testimony was given without any reference to any comparable, and for that reason we cannot give the same weight to his opinion as that of the remaining appraisers. We cannot help but be influenced by the fact that Mr. Glover had in mind selling other property to the defendants.
Mr. Johnson is the most qualified expert in the field and his attention to detail and reference to comparables was most impressive. At the same time he does not have as much experience in appraising properties located in Houma as the remaining experts.
Mr. Blouin's reasons for depreciating the value of the Kurtz property were not accepted by the trial judge and we cannot find manifest error in his conclusion in this regard.
We are impressed by the fact that Messrs. Eells and Chauvin were originally employed by the Highway Department to appraise this property. It is evident that in arriving at the market value the trial judge placed reliance on their appraisals and particularly the fact that there is no property located within walking distance of the Houma business district, available at a price remotely approaching that allowed to defendants. Any modification of the judgment on our part would necessitate an arbitrary determination with respect to valuations, as to which we can discern no substantial error.
Appellee contends that the allowance of $50.00 to his expert witnesses Glover and LeBlanc should be increased to $100.00 each. So far as the record shows, both of these witnesses were in court for only one day and their examinations of the property were not extensive. The trial judge heard their testimony and was in the best position to decide this question. We do not find manifest error.
For these reasons, the judgment appealed from is
Affirmed.
NOTES
[1] LSA-R.S. 13:3663, since repealed and now superseded by LSA-C of CP Art. 1634.