REID, Judge.
Humble Pipe Line Company instituted this expropriation suit under the provisions of LSA-R.S. 19:1 et seq., in order to secure a right-of-way or servitude across certain property situated in Section 56, Township 18 South, Range 19 East, Terrebonne Parish, Louisiana.
Plaintiff’s petition alleges that the defendants, Roy Aucoin, Inc., Roy A. Aucoin, Sr., Jasper Aucoin, Irvin Aucoin, Albon Aucoin, Lloyd Aucoin, Mrs. Lorena Guidry Aucoin, Mrs. Katherine (Kay) Aucoin Le-Blanc, individually and as testamentary executrix of the Succession of Octave Aucoin, and Mrs. Thelma Aucoin Boudreaux, were the owners of the property in question, and defendants Norris P. Dupre and Ernest Stoufflet, Jr. were lessees of said property, and the Bank of Terrebonne and Trust Company was the holder of certain mortgages affecting said property. The petition was filed April 2, 1968.
Plaintiff alleges that it is a common carrier pipeline and seeks to construct a six inch pipe line which will be coated and/or wrapped with protective treatment and will be laid and constructed at a depth where the top of the pipe line is 30 inches below the top of the original surface of the ground, or deeper. Plaintiff’s petition further alleges there are no graveyards, cemeteries, houses or improvements of any kind on the right-of-way desired, and that plaintiff and defendants were unable to agree upon the price to be paid for the right-of-way sought by plaintiff.
The landowners filed a declinatory exception to plaintiff’s petition, excepting to the jurisdiction of the Court over the subject matter of the cause for the following reasons: (1) LSA-R.S. 19:2(1), insofar as it purports to authorize the expropriation of property in the manner sought by plaintiff is unconstitutional and in violation of Article 1, Sections 2 and 6, and Article 4, Section 15, of the Constitution of the State of Louisiana, as well as in violation of the Constitution of the United States; (2) in the alternative, the property sought to be expropriated is not needed for public purposes; and (3) further in the alternative, that plaintiff failed to satisfy the necessary conditions precedent to filing expropriation proceedings as it did not attempt to conduct negotiations for the servitude purportedly required by law.
The landowners also filed a dilatory exception of prematurity on the grounds that plaintiff failed to comply with the necessary conditions precedent to filing, and as required by law, in expropriation cases of this nature, and particularly that plaintiff did not make a good faith effort to negotiate with exceptors with regard to the location of the right-of-way sought by plaintiff.
Exceptions of vagueness and of no cause of action were also filed by the landowners, the latter on the grounds that the petition does not state the point of origin of the proposed pipe line, nor its terminal point, nor any other facts which show the necessity for crossing exceptors’ property.
The landowners filed an answer to plaintiff’s petition on April 15, 1968, the same day on which the above mentioned exceptions were filed. Said answer alleged they had not refused to grant a right-of-way to the plaintiff, but averred that no pipe line as proposed by plaintiff is needed. They further alleged that the location of the proposed pipe line across their property is unduly burdensome for the reason that they had for some time been engaged in subdividing the property over which the right-of-way is sought, and because the pipe line as proposed practically bisects the subdivision, it would cause great hazard to those living nearby and would to a large extent destroy the values which defendants could receive for their property when subdivided or otherwise. They further alleged that the quantity of land sought by plaintiff *367 exceeds what is reasonably necessary for the purposes intended, and that should the pipe line he constructed as sought it would cause defendants damages in excess of $40,-000.00.
The Bank of Terrebonne and Trust Company alleged in its answer that the mortgages described in plaintiff’s petition were no longer in effect but averred that it was, at the time of the filing of its answer, the holder of another mortgage affecting an undivided 1/2 interest in the property in question and prayed that one-half of whatever amount was fixed by the Court be paid to the Bank of Terrebonne and Trust Company to apply against its mortgage. The Bank’s answer was filed April 25, 1968.
On April 26, 1968, plaintiff filed a motion for summary judgment on the grounds that the defendants failed to timely file and serve the dilatory exceptions, the declina-tory exception, the peremptory exception and the answer, and therefore plaintiff was entitled to summary judgment nullifying all defenses except that for compensation and damages, and overruling all exceptions. An affidavit by counsel for plaintiff was attached to the motion for summary judgment in which he averred that neither petitioner, Humble Pipe Line Company, nor its attorneys had received pleadings on behalf of any of the defendants until Tuesday, April 23, 1968, when the pleadings were handed to the affiant by counsel for defendants. Counsel for the defendants filed an answer to the motion for summary judgment and attached his affidavit averring that pleadings had been mailed to counsel for plaintiff on April 15, 1968.
At the time of the filing of plaintiff’s petition, that is, on April 2, 1968, an order was signed fixing the expropriation suit for trial on April 29, 1968. The above mentioned answer to the motion for summary judgment was presented to the Court on that day, April 29, 1968, and after discussion, the motion for summary judgment was denied.
The Court referred the exceptions filed by the defendants to the merits, with the provision that if at the completion of the trial counsel for the defendants was not satisfied that the merits of his peremptory exception of no cause of action had been fully ventilated by the testimony on the trial on the merits, he would be afforded an opportunity to adduce additional testimony only with reference to his peremptory exception and that in such case counsel for plaintiff would be afforded an opportunity to rebut such additional evidence.
The trial on the merits was commenced the same day, April 29, 1968, and continued on May 15, 1968, and on May 21 and 22, 1968.
On October 25, 1968, for written reasons assigned, judgment was rendered and signed, ordering payment to Roy Aucoin, Inc., Roy A. Aucoin, Sr., Jasper Aucoin, Irvin Aucoin, Albon Aucoin, Lloyd Aucoin, Mrs. Lorena Guidry Aucoin, Mrs. Katherine (Kay) Aucoin LeBlanc, individually and as testamentary executrix of the Succession of Octave Aucoin, and Mrs. Thelma Aucoin Boudreaux, by means of deposit in the registry of the Court, of the sum of $4,994.00 as full and final payment for the right-of-way, servitude and easement, and granting the Humble Pipe Line Company for its uses and purposes a right-of-way, servitude and easement to lay, construct, maintain, repair, replace, change the size of, and remove in whole or in part a six inch pipe for the transportation of petroleum products and by-products thereof over and across the following described property of defendants:
A certain tract of land located in the Parish of Terrebonne, Louisiana, more particularly described as follows:
1. The South half of the Southeast Quarter and the Southeast Quarter of the Southwest Quarter (S/£ of the SEJ4 and the SEi/j. and the SWJ4 of Section 56, in T 18 S, R 19 E;
*368 2. The North Half of the Southeast Quarter (Nji of the SEi/j) of Section 56, T 18 S, R 19 E.
said servitude and right-of way being more particularly described as follows :
PERMANENT SERVITUDE
A strip of land 30 feet in width lying 15 feet Northwesterly and 15 feet Southeasterly of the following described line according to a map attached as Exhibit B to the petition of plaintiff filed herein:
Beginning at a point in the most easterly North property line, said point being South 88 deg. 41 min. 32 sec. West 1155.-91 feet from the Northeast corner of the Southeast Quarter of Section 56, T 18 S, R 19 E;
Thence South 38 deg. 05 min. 24 sec. West — 3419.13 feet to a point in the South line of said Section 56, said point being South 88 deg. 41 min. 00 sec. West 3328.50 feet from the Southeast corner of said Section 56.
All bearings are based on the Louisiana Co-Ordinate System, South Zone, the right-of-way or servitude containing 2.35 acres, more or less.
TEMPORARY SERVITUDE
A strip of land 20 feet in width lying 20 feet Northwest of the Northwest boundary of the permanent servitude herein-above described and being at all times parallel to the said Northwest boundary of said permanent servitude as said permanent servitude traverses the entirety of the property hereinabove described.
The said judgment further decreed that the defendants shall retain the ownership and use of the property so long as such use does not interfere with the rights adjudged to plaintiff, and also set forth a number of limitations to plaintiff’s use and occupancy of the servitude granted it. The Court also ordered the money to be paid into the registry of the Court to be distributed to the various co-owners of said property in accordance with their proportionate ownership, except that the proportionate amount attributable to the owner of an encumbered interest should be distributed to the mortgage and privileged creditors of said encumbered interest according to their priority, in accordance with the provisions of R.S. 19:11. It also fixed the expert witnesses’ fees of Hartwell A. Lewis and Charles D. Chauvin at $450.00 each, to be taxed as costs, and overruled the exceptions filed by defendants.
Humble Pipe Line Company was granted a devolutive appeal, and the landowners filed an answer to the appeal seeking an increase in the award of the lower Court.
The plaintiff, Humble Pipe Line Company, alleges the following specifications of error: (1) the trial Judge erred in permitting the defendants to call and qualify an independent appraiser on cross-examination; (2) the trial Judge erred in accepting as correct the estimate of value given by the witness, Chauvin (the independent appraiser mentioned in the first specification of error); and (3) the trial Judge erred in refusing to accept the estimates of value given by plaintiff’s appraisers, Mr. Driggers and Mr. Derbes.
The defendants also alleged three specifications of error, as follows: (1) the trial Court erred in finding that plaintiff had shown a necessity for expropriation; (2) the trial Court erred in treating the land to be included within the servitude tract as raw acreage; and (3) the trial Court erred in failing to require the payment of severance damages.
There are two basic issues in this case: (1) whether or not the plaintiff showed a necessity for expropriation, and (2) the amount of damages to be awarded.
Regarding the first question, the trial Judge, in his reasons for judgment, stated that he was satisfied that plaintiff had shown a necessity for expropriation and thus had a right to maintain the suit and, *369 therefore, the case reduced itself solely to the question of the value of the land being expropriated. With that position of the trial Judge, this Court is in agreement.
In regard to the right of plaintiff to expropriate, the defendants contend that as this is an expropriation suit brought by a private corporation, the private corporation does not have the same latitude that the State or a subdivision or agency of the State has in an expropriation suit, and quotes a Comment in 18 Louisiana Law Review 509 (1958), at page 519, to the effect that in the situation where a power company seeks to acquire a servitude for its lines, the court should be more liberal in its attitude respecting the proposed location, as in such a case a slight change in location may decrease the injury done to the owner without appreciably increasing the cost to the taker. While counsel for plaintiff admits that this Law Review comment is based on LSA-R.S. 19:2(9), which does provide special limitations on electrical power companies, he points out that this limitation only applies to power companies as shown by the cited Law Review article.
There is some testimony that it was possible that an alternate route could be located either 500 or 1000 feet upstream or downstream and thus cause less injury to the property owners.
The defendants also complain that the pipe line will lay across a strip or ridge along which defendants plan to develop a subdivision, and will run through the middle of the part of the proposed subdivision being developed, along the ridge. In this regard, it should be pointed out that in setting the land value, the trial Judge rejected defendants’ contention that the property should be valued on the basis of the proposed subdivision.
The record shows that the pipe line route was laid out with sound engineering principles and that at the time plaintiff’s field engineers were working with the survey party, when the line was established for crossing the Aucoin property Mr. Roy Aucoin, the spokesman for the landowners, discussed the route of the pipe line and while not particularly pleased with the route, he did not mention that he had a plan or recommendation for any other route, nor did he then mention a preliminary plan of the proposed subdivision or show it to the engineers. While the record shows that a representative of the plaintiff had requested a copy of the subdivision from Mr. Aucoin and from Mr. Aucoin’s attorney, no copy of such plan of subdivision was ever shown plaintiff’s representative until the trial. The record shows that at the time of the trial the route across the Aucoin property was fixed, because rights-of-way had already been secured from abutting owners and, therefore, the points of entry and exit across the Aucoin property were controlled. The record also discloses that the entire line was selected to run in as nearly straight a line as possible, with very few curves.
It is the opinion of this Court that Plaintiff, in selecting its line, has not acted in bad faith and has not been arbitrary or capricious in this regard.
In the case of Central Louisiana Electric Co. v. Covington & St. Tammany Land & Imp. Co., 1st Cir. 1961, 131 So.2d 369, at page 375, this Court held as follows:
"Regarding the general subject matter of expropriation the jurisprudence of this state has evolved certain fundamental concepts and rules which have been repeated on innumerable occasions. One such cardinal principle is that in the location of rights-of-way considerable discretion is vested in the expropriating authority and the courts will not disturb or interfere with the exercise thereof in the absence of fraud, bad faith or conduct or practices amounting to an abuse of the privilege. [Citations]
“It is also well settled that availability of other and alternate routes is of no concern to the property owner whose land is sought to be expropriated provided the location selected fulfills the *370 needs and requirements of the expropriator, meets the standards prescribed by sound engineering and economic practices is neither arbitrarily nor capriciously chosen, and does not constitute an abuse of the discretionary right of selection. * *
The holding of this Court in Texas Eastern Transmission Corporation v. Bowie Lumber Co., 1st Cir. 1965, 176 So.2d 735, cert. den. 248 La. 385, 178 So.2d 663, is also appropriate. In that case we held as follows:
“It is the rule in this State, and which prevails in all other jurisdictions that we had examined, that in expropriation of property, including servitude, rights of passage, and right of ways of the type here under consideration, the selection of a route by the expropriating authority or agency will not be disturbed or upset except upon showing by the party resisting the expropriation that the selection was made through fraud, bad faith or conduct or practices amounting to an abuse of the privilege.
“There is the presumption present that the selection made by the expropriating authority is the best and most feasible. While it is true as was stated by this court in Central Louisiana Electric Company v. Covington and St. Tammany Land and Improvement Company (1961) 131 So.2d 369, on page 376 that:
“ ‘It is elementary that in all expropriation cases the prohibition against arbitrary, unreasonable, capricious and unnecessary taking is ever present.’
still the burden is with the defendant to show that the plaintiff herein is guilty of fraudulent practices, bad faith or conduct or practices amounting to an abuse of the privilege of expropriation.
* * * * * *
“At this point the proposed route had been finalized into definite selection, and while not necessarily approving its avoidance of further discussion of the route, we find no legal reason or basis for holding that plaintiff is guilty of such conduct as would vitiate its selection of the route and impose upon it an alternate route.”
It is clear from an examination of this record that although the defendants may have been unhappy with the route, and that it might have been possible to make alternate routes, the defendants nevertheless have failed to show any evidence whatsoever to indicate that the facts in this case were such that the rule as set forth in Central Louisiana Electric Co. v. Covington & St. Tammany L. & I. Co., supra, and Texas Eastern Transmission Corporation v. Bowie Lumber Co., supra, should be changed. The record is devoid of any showing that plaintiff has acted in an arbitrary, capricious or fraudulent manner. We, therefore, feel that the trial Court was correct in upholding the right of plaintiff to expropriate.
With regard to the next basic question, that is, the value to be placed on the land to be expropriated, there are two main issues: (1) whether or not the trial Judge should have permitted Mr. Charles D. Chauvin (an independent real estate appraiser who had been contacted by representatives of the plaintiff but not used), to be qualified on cross-examination by the defendants as an expert witness, and permitted to express opinions and be awarded an expert witness fee for testifying, and at the same time not to permit counsel for plaintiff to examine or cross-examine the witness at all; and (2) the exact value to be placed on' the property expropriated.
From a reading of the trial Judge’s reasons for judgment, it is difficult to determine upon what evidence he based his finding as to the value to be given the land expropriated.
The defendants relied upon one appraiser (other than Mr. Chauvin whose testimony will be discussed later), that is, a Mr. Hartwell Lewis of Houma, who based *371 his appraisal on the value of the land as a subdivision, which figure, as pointed out by the trial Judge, was based on the proposed value of the lots after the completion of the proposed plan of subdivision. Mr. Lewis testified that he felt the best use for the land was for homesites. He had looked at two additional subdivisions and it was upon his observation of the other two subdivisions that he had reached his opinion. On cross examination, however, Mr. Lewis was unable to give an opinion as to what a willing buyer would pay to purchase the property as it was. Mr. Lewis was asked on cross-examination whether or not when arriving at his appraisal he gave any consideration to the cost of developing the subdivision, and he testified he had not, that he was not furnished any figures relating to the cost of developing the subdivision, and that he did not compute any such cost himself. He further testified there was not at that time a subdivision, nor had there been any improvements made other than some dirt had been moved for the drainage and a roadway had been constructed for access. He admitted, however, that most of the access road was on Mr. Dupre’s land and not on Mr. Aucoin’s land. He was also aware that Mr. Burke, defendants’ land surveyor, had not surveyed the proposed lots, and he testified that he had not engaged in subdivision developments himself. Under these circumstances, the trial Judge was correct in rejecting the testimony of Mr. Lewis as being irrelevant. In referring to Mr. Lewis’ appraisal, the trial Judge said:
“This figure is based upon the value of lots after completion of the proposed plan of subdivision including the construction of roads, installation of gas and water lines, and necessary clearing, filling and grading of the tract. This Court must necessarily reject the testi-mong of Mr. Lewis as being irrelevant by reason of the fact that the law in this instance is to the effect that the property must be valued as and according to its condition at the time that the expropriation suit is instituted, which in this instance relegates the property in question to the status of mere raw acreage.”
The trial Judge’s rejection of Mr. Lewis’ testimony is given greater weight by the testimony of Mr. Michael Burke, the surveyor and engineer who drew up the proposed subdivision maps upon which Mr. Lewis based his appraisal. Mr. Burke testified that the maps were nothing more than a preliminary layout of a possible development. He further testified there were no dimensions on the lots; that the preliminary layout was to see how many lots could be obtained; that the property had not actually been surveyed to show the proposed lots; that he had no figures on costs; that he did not know where the road would actually be located; that he did not know how many acres would be included in the preliminary plan or how many feet of road would be built; and that he had not started work on a contour map which was required for subdivision approval. Mr. Burke’s testimony gives added weight to the trial Judge’s holding that the land could only be valued as raw acreage and not as subdivision land, and also makes it apparent that Mr. Lewis’ testimony was entirely speculative in that he was trying to project the sale of lots in existing subdivisions as comparables for sales of lots in a proposed subdivision upon which no cost figures had been given.
In his reasons for judgment, after rejecting the testimony of Mr. Lewis, the trial Judge then came to the question as to what value he felt should be assigned to the acreage sought to be expropriated. He first completely rejected the testimony of plaintiff’s two experts, Mr. Max Derbes, Jr. and Mr. Chester J. Driggers, “as being so grossly inaccurate so as to not be susceptible of being employed in these proceedings.” This holding by the trial Judge we will discuss later in this opinion. The trial Judge then took up the testimony of one other witness, a Mr. Charles Chauvin, who testified that he had been employed by the attorneys for the plaintiff *372 but they had not used his testimony after he had made his appraisal. He had utilized subdivision comparables in arriving at a valuation on a subdivision basis, and this the trial Judge rejected. However, the trial Judge apparently accepted with some modification the testimony of Mr. Chauvin concerning the appraisal on an acreage basis. Mr. Chauvin recited four sales which he considered comparable sales of acreage and he came up with a figure valuing the property expropriated at $2500.00 per acre. The trial Judge then stated that, taking into consideration all of the comparables introduced into the record at the trial, and considering the relevant testimony of all of the experts involved, he believed the value of the property sought to be expropriated was $2250.00 per acre for the permanent servitude and 20% thereof for the temporary servitude. Although not directly saying so, it can only be assumed by a reading of the record that the trial Judge based his opinion primarily upon the testimony of Mr. Chauvin that the property had a value of $2500.00 per acre.
As mentioned before, one of the main points at issue in this case is the correctness of the ruling of the trial Judge in permitting Mr. Charles D. Chauvin, an independent real estate appraiser residing in Terrebonne Parish, to testify. Mr. Chauvin was called by the defendants on cross-examinatoin and qualified by the defendants as as expert witness and he was permitted to express opinions and was awarded an expert witness’ fee for testifying. Counsel for plaintiff objected and at the conclusion of Mr. Chauvin’s testimony requested that he be permitted to examine the witness. The Court refused this request, saying that he was called on cross-examination.
Mr. Chauvin testified that he was contacted by the attorneys for the plaintiff, and while he had not been paid, he had made an appraisal on behalf of plaintiff, which appraisal had been sent in letter form to one of the attorneys for plaintiff, stating he had made the appraisal approximately three weeks or a month before forwarding it to plaintiff’s attorney, Mr. Parker, on April 26, 1968.
It is plaintiff’s position that under Article 1634 of the Code of Civil Procedure, Mr. Chauvin should not have been permitted to testify. That article reads as follows:
“Any party or his representative may be called as a witness and cross examined by an adverse party without the latter vouching for his credibility, or being precluded from impeaching his testimony. The court may permit the recall and further cross examination of the party or of his representative as often as it deems in the interest of justice.
" ‘Representative’ as used in the paragraph above and in Article 1428(2) means an officer, agent, or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time his testimony is taken.”
Plaintiff alleges that Mr. Chauvin was neither an officer of Humble Pipe Line Company nor an employee of Humble, that he had no supervision of the matter, that he was an independent real estate appraiser, and that he should not have been called on cross-examination. The trial Judge permitted him to be called on cross-examination as an agent of Humble having knowledge of the matter in controversy.
In answer to the argument of plaintiff, the defendants cite two decisions based upon former LSA-R.S. 13:3662, 13:3663, from which Article 1634 of the Code of Civil Procedure is derived. Those cases are State Through Department of Highways v. Cook, 124 So.2d 221, La.App.2nd Cir. 1960, cert. den. 1961, and State Through Department of Highways v. Kurtz, 143 So.2d 761, La.App. 1st Cir. 1962.
Counsel for plaintiff states that while he is aware of this Court’s holding in the Kurtz case, where the landowner had been *373 permitted to call on cross-examination two appraisers who had been engaged by the Highway Department to appraise property, he urges that this Court should reconsider the holding in the Kurtz case, and that it should either be overruled or restricted to expropriation cases involving the provisions of LSA-R.S. 48:441 et seq., the “quick-taking proceedings” which are applicable to the Louisiana Department of Highways. This argument is based on the fact that in the Kurts case Judge Pro Tem Miller relied upon the case of State Through Department of Highways v. Cook, supra, wherein the court held as follows:
“It would be difficult for us to conceive of any more explicit and self-explanatory wording of purpose and intent in any legislative enactment. In the instant case the party called for cross-examination was an expert appraiser employed by plaintiff, who unquestionably possessed specific ‘knowledge * * * of the matter in question * * ” As a matter of fact, the appraisal made by this employee was the one accepted by plaintiff, which deposited in the Registry of the Court the exact amount of his valuation.
In the Cook case the employee called on cross examination did meet the test of “an officer, agent, or employee having supervision or knowledge of the matter in controversy, ■ in whole or in part,” for he had' been the employee whose appraisal was accepted by the plaintiff and plaintiff deposited in the registry of the court the exact amount of his valuation. In the Kurts case this Court stated:
“We are in complete agreement with our learned brothers of the Second Circuit in their statement in the Cook case, supra, that:
“ ‘It would be difficult for us to conceive of any more explicit and self-explanatory wording of purpose and intent in any legislative enactment. In the instant case the party called for cross-examination was an expert appraiser employed by plaintiff, who unquestionably possessed specific “knowledge * * * of the matter in question * *
It would appear that in the latter case the Court did not recognize the distinction set forth in the Cook case, for in the Kurts case the two appraisers called on cross-examination were not the appraisers whose appraisals were accepted by plaintiff, they did not sign the certificates of appraisal introduced, and the amount of money deposited in the registry of the Court was not the amount of their appraisal. It should be pointed out that in the Kurts case the Court further stated that the Second Circuit has since followed the Cook case in the case of State Through Department of Highways v. Milam, La.App.1961, 130 So.2d 145. However, the Milam case does not indicate whether or not the so-called employee,, whose appraisal had been obtained by the Highway Department, had signed the certificate of valuation which was accepted by plaintiff and upon which the deposit into the registry of the Court was based. Therefore, before this Court is the question of whether or not this Court should reconsider the Kurts case or should limit its application to the takings by the Highway Department whereby the appraisals made are determinative of the amount of money which is deposited into the registry of the Court.
In the Kurts case the appraisers in question, one of whom was the same Mr. Charles D. Chauvin whose testimony is at issue herein, had been employed by the plaintiff, the Department of Highways, to make appraisals of numerous properties to be expropriated for the same purpose and at the same time as the subject property in that case, and were specifically employed by and did appraise the subject property for the plaintiff. However, the appraisals were rejected by plaintiff and neither of those appraisers signed the instrument of just compensation annexed to the plaintiff’s petition.
*374 In the Milam case the facts do not disclose whether or not the appraiser, whose testimony was admitted over the objection of the State, signed the certificate of just compensation. However, in the Milam case the Court stated: “An identical complaint was recently made in the case of State Through Dept. of Highways v. Cook, La.App. 2nd Cir., 1960, 124 So.2d 221. This objection was held without merit and the point has been conclusively disposed of by both this court and the Supreme Court in its refusal of application for writs.” Of course the refusal by the Supreme Court was in the Cook case. There was no application for writs in the Kurtz case. Therefore, an examination of the Milam case does not indicate whether the factual situation was the same as in the Cook case or the Kurtz case. The only indication as to the factual situation is the language of the Court “An identical complaint was recently made in the [Coofe] case.”
An examination of the opinion of the Court in the Kurtz case does indicate that this Court did extend the rule of the Cook case to accomplish a situation where an appraiser who had been employed by the expropriating authority, the Highway Department, but who had not signed the estimate of just compensation annexed to the plaintiff’s petition, could be called on cross-examination as an expert witness by defendant landowners. The case also indicates that the holding in the Kurtz case was based on the ruling of the Cook case, and while this Court does not feel it is necessary at this time to pass upon the correctness of the Cook case, it is felt that this Court was in error in extending the Cook case beyond the factual situation set forth in the Cook case, that is, that the appraisers who had not been called by plaintiff had in fact unquestionable specific knowledge of the matter in question because their appraisal had been the one accepted by the plaintiff and upon which the money deposited in the registry of the court was based. This distinction is valid in that once the appraiser signs the certificate of valuation it becomes a part of the suit record and he would have specific knowledge of the matter.
That there was some confusion in this matter can be seen by an examination of the decision of this Court in State of Louisiana Through Department of Highways v. Lewis, et ux., 142 So.2d 652, rehearing denied June 29, 1962, wherein one of the procedural questions raised was the refusal of the trial Judge to call the appraiser who had been employed by the Department of Highways to appraise the subject property and who had signed a certificate in which the estimated value of the property expropriated was fixed at $54,476. In that case, which was factually the same as the Cook case, Judge Herget, speaking as the organ of the Court, quoted the Kurtz case while holding that the appraiser should have been called on cross-examination. He went on to hold, however, that since the appraiser not called had fixed the value of the expropriated property in the certificate at a value less than what the Court held to be full value, no useful purpose would be served by remanding the case for the taking of his testimony. It should again be emphasized, however, that in the Lewis case the appraiser in question had been the one who had signed the certificate.
It is therefore the position of this Court that insofar as the Kurtz case extended the doctrine set forth in the Cook case, it was in error and we specifically overrule that portion of the Kurtz case which deals with the question of the right of the defendant to cross-examine an appraiser who was not summoned and used by the plaintiff and who did not sign the estimate of valuation certificate for the plaintiff.
Again we wish to emphasize that we are in no way passing upon the soundness of the rule as set forth in the Cook case, or the rule based upon the factual situation set forth in the Lewis case.
*375 We would also like to emphasize that in all the cases cited the expropriating authority was the Department of Highways; all were cases under the so-called “quick-taking” statute, that is, where the expropriating authority, based upon the appraisals given it, determines the amount of money which should be deposited in the registry of the Court and immediately takes the land. We feel that there is some merit in plaintiffs contention that the rule on cross-examination should be restricted to the provisions of LSA-R.S. 48:441 et seq. the “quick-taking” proceedings which are applicable only to the Louisiana Department of Highways, but in view of the above we do not feel that it is necessary to so hold.
After an examination of the record in this case, it certainly must be said that, where the expropriating authority, through its attorney, employed an independent appraiser approximately three weeks or a month before the trial to make an appraisal, and the appraisal was forwarded exactly three days before the date of the trial, but the appraisal was not or could not be accepted by plaintiff, then it would not be right to permit the adverse party to call that appraiser on cross examination under the provisions of Article 1634 of the Code of Civil Procedure. It is the opinion of this Court that the trial Judge was in error in permitting the defendant to call Mr. Chauvin on cross-examination and, therefore, his testimony must be disregarded.
As we have mentioned above, the trial Court disregarded the testimony of the plaintiff’s two experts, Mr. Derbes and Mr. Diggers as “being so grossly inaccurate so as not to be susceptible of being employed in these proceedings.” With this opinion of the trial Court we cannot agree.
Mr. Derbes, who was a qualified appraiser and who had testified many times in the Courts in this State, testified as follows:
“A. I studied the neighborhood, I studied the property. I researched the sales in the area, I talked with some of the principals that were involved in those sales. I studied the relationship between those sales and the Aucoin property. I came to a conclusion of what I believe to be the market value of the various portions of the property because the property is not all similar. I came to a conclusion as to what, with those contributory values, the total average acreage value of the Aucoin property was. Then I estimated what the market value of the area involved in the permanent 30 foot wide right-of-way and as that related to the nature of the various types of land. Then I studied the situation from the standpoint of whether, the, what would be the market value of the 20 foot temporary right of way. And lastly, I studied as to whether those pipelines caused and severance to the market value of the property. I did not mention that in arriving at that value, I did make an estimate of what the highest and best use of all of the various segments of the property were.”
and concerning the best use of the property, he testified that the best use was for agricultural purposes. Mr. Derbes classified the types of land through which the pipe line would run, and the breakdown of how he appraised the land is as follows:
“A. * * * There is in the North most 350 feet 0.24 acres which I estimate as the contributory value of $800 per acre, and I award 100% for this area or $192. From that point all the way to the South pasture, it goes through a tree swamp, a marsh, across the big canal, another marsh, a tree swamp with cypress trees in it, and then to the South pasture. That whole area is 1.7 acres, its slightly less than that, but I’m using 1.7. I estimate that it has contributory value of $312 per acre. I award *376 80% for this area because the owner afterwards will still have rights of pasture incorporation of the area into yards at some far distant future date. At any rate, I award 80%, and that is $424. The South pasture through which the line runs, I estimate has an un-encumbent value of $500 per acre. It contains 0.45 acres. I give 80% of this. That is $180. That is 80% of the pasture area on the South side. Now, to give you a recap on it, North 0.24 acres, $800, 100%, $192. Middle, 1.7 acres, $312 per acre, times 80% $424. South 0.45 acres, $500, 80%, $180. Total $796.”
And in regard to the value placed on the the temporary work servitude it was Mr. Derbes’ opinion that:
“A. It has approximately 1.6 acres, and rather than articulate the breakdown, I used the $400 average value times 20% and that is $127 which I rounded to $128 because it made the conclusion rounded to $925.”
Mr. Derbes relied upon eight sales in both Lafourche and Terrebonne Parishes, as the property in question is near the parish line. He then used the information from those comparables, together with other information, and he made a calculation as to the approximate acreage of each type of land included within the subject property and he further testified that he visited the property and thoroughly inspected it on the ground and from the air. He also studied photographs which were introduced into evidence. The record shows that Mr. Derbes had made a thorough and exhaustive study of the property in question. Regarding his testimony as to the best use for the property it should be pointed out that there were no improvements on the property at the time of the trial, it was subject to two agricultural leases, and the property fronted on no public road. In fact the property was some 1600 feet from the nearest road, the Pointe aux Chenes Road. Access was by means of a private servitude or passage 40 feet in width, and at the time of the trial the private servitude or passage had not yet been opened, although the defendants had begun clearing the area on Mr. Dupre’s property through which they intended to construct a road.
The other appraiser used by plaintiff was Mr. Chester J. Driggers. He testified that “in describing the tract, approximately 50% or more of the whole property would be considered as marshland and portions of the land was between marsh and woods lands. * * * This property is to the West or Southwest of Pointe aux Chenes road. The nearest point is approximately 14 mile to the built up area along the road at the nearest point of the pipeline.” Mr. Driggers placed a value of $300 per acre, and for the 2.35 acres in permanent servitude $565, and for the 1.75 acre temporary servitude assigned a value of $95, or a total of $660. He relied upon three comparable sales, and it should be pointed out that the comparables relied upon by Mr. Driggers were also relied upon by Mr. Chauvin. It should also be pointed out that the comparable properties were higher in elevation and were on existing roads or easy access roads. It is not felt necessary to go into detail concerning the testimony of Mr. Driggers since we feel that the appraisal by Mr. Derbes is fair and that the value fixed by him of $925 should be the amount of just compensation due the defendants.
For the above and foregoing reasons it is ordered that the judgment of the lower Court be amended by reducing the award of compensation granted from $5,994 to $925; that the fee of $450 allowed to Charles D. Chauvin as an expert appraiser is hereby stricken out and eliminated; and in all other respects the judgment of the trial Court is affirmed.
Amended, and affirmed.